**The TOWARD A GAYER BICENTENNIAL COMMITTEE et al.**

v.

**The RHODE ISLAND BICENTENNIAL FOUNDATION et al.**

**Civ. A. No. 76–93.**

United States District Court, D. Rhode Island.

June 25, 1976.

---

Stephen Fortunato, Jr., Pawtucket, R. I., for plaintiffs.

Peter J. McGinn, Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

On July 11, 1975, the plaintiff Toward a Gayer Bicentennial Committee (the Committee) submitted a proposal to the defendant Rhode Island Bicentennial Commission (the Commission) describing plans for a "Congress of People With Gay Concerns," a "Gay Pride Parade," and a midnight Prayer Vigil, all to be held on June 26, 1976, during National Gay Pride Week. The Committee sought to have these activities included in the Commission's calendar of Bicentennial events and requested use of the Old State

House as a site for its proposed Congress. The Commission denied the Committee's request, giving two reasons: first, that there was an insufficient nexus between the Committee's proposal and the Bicentennial, and second, that practices advocated by the Gay movement are of questionable legality.

Litigation was instituted in this Court, and in an opinion rendered on June 9, 1976, 417 F.Supp. 632, the Court reached the following conclusions:

1. The Rhode Island Bicentennial Commission has created in the Old State House a limited public forum for activities related to Bicentennial themes.

2. The close scrutiny and rigid standards of First Amendment analysis must be applied to an examination of the Commission's criteria for restricting access to the Old State House.

3. The Commission has, on its own initiative, chosen to make official Commission endorsement a prerequisite to access to the Old State House. In so doing, it has therefore made its criteria for endorsement subject to the same scrutiny, under the same standards, as any other restraints on free speech.

4. Based on the Commission's criteria for endorsing Bicentennial activities, as they were presented to the Court, the Committee's proposal for a Congress of People With Gay Concerns appeared to have a sufficient nexus with the Bicentennial theme of "Horizons" to warrant Commission endorsement.

5. Government is barred from interfering with all speech excepting that which is calculated to produce "imminent lawless action," and there is no evidence in the record to indicate that the Committee's proposed activities would be so calculated.

In light of these conclusions, the Court ordered the defendants to either endorse the plaintiffs' proposals, or to promulgate in writing clear and precise standards to be used in evaluating proposals for endorsement. If new standards were to be issued, the plaintiffs were to be given an opportunity to resubmit their proposal in light of the new standards, and were to be given response from the Commission within five days.

The Commission chose to promulgate a new statement of their criteria, and on June 16, 1976, it issued "Supplemental Standards and Procedures for Endorsement." On June 18, the Toward a Gayer Bicentennial Committee submitted a new proposal for endorsement to the Commission in accordance with the newly issued standards. On June 22, the Commission met to consider the Committee's proposal and voted to deny endorsement to all four components of the Committee's proposal. Pursuant to this Court's opinion of June 9, the Commission stated the reasons for its decision in writing in a letter from counsel to this Court dated June 23, 1976. The matter is now before the Court to determine whether the plaintiffs are entitled to further relief.

The Committee's June 18 proposal makes four separate requests of the Commission:

"1. Endorsement of Gay Pride Day Parade, sponsored by The 'Toward A Gayer Bicentennial' Committee, June 26th, 1976, 2:00 PM.

2. Use of the Old State House for a Congress of People With Gay Concerns, June 26th from 10:00 to 11:30 AM.

3. Designation of these two events, with a Prayer Vigil on The Steps of the Federal Building, Midnight, June 26th, as 'Gay Pride Day 1976' on the Bicentennial Calendar.

4. Designation of the week, June 20th thru June 26th as 'Gay Pride Week' on the Bicentennial Calendar."

The Commission decided by an 8 to 4 vote to deny endorsement to the Gay Pride Day Parade on the grounds that a) city officials had indicated that a parade permit would not be issued and the parade was therefore not feasible, and b) the Commission felt the Committee "had not demonstrated the ability to sponsor a parade which would merit the endorsement of the Commission." Because another group had a longstanding commitment to use the Old State House at 11:00 a. m. on June 26, the Commission

considered the possibility of its use by the Committee from 9:30 to 11:00 a. m., rather than the 10:00 to 11:30 a. m. period requested by the Committee. The Commission denied that request by a vote of 7 to 5, on the ground that access to the Old State House was premised on endorsement, and "endorsement would involve approval." By a 9 to 4 vote, endorsement of the Prayer Vigil and Gay Pride Day were denied because there was no Bicentennial nexus and because the Commission ·endorsed projects only, not "days" as such. Finally, by a vote of 13 to 0, endorsement of Gay Pride Week was denied for lack of a Bicentennial nexus.

It should be noted that of the four requests made of the Commission by the Committee, only one concerns the question of access to the limited public forum, the Old State House. In denying endorsement to the Gay Pride Parade, the Prayer Vigil, Gay Pride Day and Gay Pride Week, the Commission is in no way denying the plaintiffs access to a public forum. Assuming a parade permit is granted, which is not an issue in this case, the parade, the vigil, and the celebration of Gay Pride Day and Week will be conducted in exactly the same fashion with or without the Commission's endorsement. This is not the case with the Congress of People With Gay Concerns. Without the Commission's endorsement, the Congress cannot be held in the Old State House but could only be held in some alternative, and presumably less satisfactory, forum. Thus, a different standard must be applied in reviewing the Commission's decision to deny the Committee access to the Old State House as opposed to its decision to deny endorsement of the other activities.

According to this Court's opinion of June 9, restrictions on access to the limited public forum of the Old State House can be justified on only two grounds: first, that they are necessary to regulate reasonably the "time, place, or manner" of the expression in the forum, and second, that in a clear, precise, and even-handed manner, they are used to screen proposals for their appropriate Bicentennial nexus. The Commission's explanation of its decision to deny the Committee access to the Old State House relies on neither of these criteria. According to the June 23 letter, "The general sentiment of the Commission and the principal reason for denial of this proposal appeared to be that endorsement would involve approval." This is a totally unacceptable reason for the Commission's action. The United States Supreme Court has held on numerous occasions, as this Court noted in its June 9 opinion, that government officials may not restrict access to a public forum simply because they disagree with, or disapprove of, the views to be expressed there. *See, e. g., Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Police Dept. of the City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). This Court explicitly ruled in its June 9 opinion that the fact that the Commission may consider endorsement of a proposal tantamount to approval of the ideas expressed therein is no excuse for curtailing the First Amendment rights of otherwise qualified applicants. To quote once again the words of Judge J. Skelly Wright:

> "If [First Amendment rights] could be exercised only when government is willing to offer its co-sponsorship to the speaker, a system of free expression would be indistinguishable from a system of prior restraint."

*Women Strike For Peace v. Morton,* 153 U.S.App.D.C. 198, 472 F.2d 1273, 1280 (1972).

The Bicentennial Commission is not being asked to declare its agreement with the ideas to be expressed at the Congress of People With Gay Concerns; it is merely being asked to provide a forum for the plaintiffs' exercise of their First Amendment rights. It was the Commission's own decision to condition access to the forum upon endorsement.

The letter from the Commission's counsel did not state that the Committee's request for use of the Old State House was denied for lack of a Bicentennial nexus, and indeed such an assertion would be without foundation. The Congress of People With Gay

Concerns, as it is described in the Committee's June 18 proposal,

> "will present the history of homosexuals as they were treated in the Western Christian Tradition and among North American aborigines with special emphasis on early Colonial and Revolutionary Era practice. One participant, a lawyer, will develop the history of legal bias in reference to homosexual, and indeed, heterosexual, practices beginning with the philosophical underpinnings of the Western system of justice. Another, a Ph.D., will deal with the history of the homosexual presence in this society. Another, a minister and college chaplain, will deal with the whole area of religion and the homosexual."

The plaintiffs' proposal for use of the Old State House clearly falls within the "Horizons" theme as described in the Commission's June 16 Supplemental Standards. The proposal "relates to means to improve the Nation and State and delineates the role of special groups in that process of improvement." Supplemental Standards at 2. Moreover, the proposal "show[s] a tie between the State or Country's past and its future. It is in this historical evolution, the tracing from past to present with a projection into the future, that a true Bicentennial nexus is established." *Id.*

■ As noted, *supra*, the three other requests for endorsement made of the Commission by the Committee do not involve access to the public forum of the Old State House, and First Amendment standards of review are therefore not automatically invoked. Nevertheless, this Court ruled in its June 9 opinion in note 6 that even where the government may grant or withhold a benefit, such as endorsement, with great discretion for a variety of reasons, "[i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). *See also Advocates for the Arts v. Thomson*, 532 F.2d 792, 798 n. 8 (1st Cir. 1976). *Cf. Bishop v. Wood*, —— U.S. ——,

at ——, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In light of the persistent attitude of the Commission, displayed again in the letter from its counsel dated June 23, that it does not wish to endorse the proposals of the Toward a Gayer Bicentennial Committee because it does not approve of the ideas to be expressed by the proposed projects, this Court must place a heavy burden of persuasion on the Commission to justify a refusal to endorse any Committee proposals that appear to meet the Commission's June 16 Supplemental Standards for endorsement and that bear a strong similarity to proposals of other groups which have received Commission endorsement in the past.

■ The Commission does not contend that the proposed Gay Pride Day Parade has an insufficient nexus with the Bicentennial, and it appears from the Committee's proposal that at least two of the parade's six divisions will have a substantial historical orientation. Rather, endorsement was denied because the project was considered not "feasible," because of doubt that a parade permit would be issued and because the Committee had not demonstrated the "ability" to sponsor a parade. According to the Committee's proposal, however, the parade will be monitored by twenty marshals who will have had experience with Gay Pride parades in other New England cities. Moreover, Rev. Gilbert, the Committee's chairperson and project liaison, served for six years as parade director of the St. Patrick's parade in Sacramento, California. It does not appear that the Commission sought or relied upon any documents or evidence beyond plaintiffs' proposal in reaching its conclusion that plaintiffs had failed to demonstrate sufficient ability to sponsor the parade. On this record, the Court must conclude that the Commission's assertion that the Committee does not have the ability to sponsor a parade is without a basis in fact. *Cf. Drown v. Portsmouth School District*, 451 F.2d 1106 (1st Cir. 1971). At the same time, it must be noted that the parade appears to have a Bicentennial nexus, and that other parades have received Commission endorsement. It appears that, contingent upon the issuance of

a parade permit by city officials, endorsement of the Gay Pride Day Parade is in order.

However, before granting injunctive relief on this issue, the Court must first be persuaded that endorsement of the parade at this late date will be meaningful. The benefits of endorsement, as represented to the Court, consist of:

1) use of the Old State House, not required here;
2) listing in the Commission's calendar of events, no longer practical here;
3) use of the "R176" logo;
4) the intangible impact of endorsement on the credibility and successful publicity of an event, which it appears is realistically negligible in view of the one day interval between endorsement and the event.

Thus the question before the Court is to determine whether the plaintiffs will be irreparably harmed if their parade proceeds on Saturday, June 26, without the display of the "R176" logo. I find acceptance of that premise extremely difficult. The unfortunate aspect of this case is that we are reduced to such a narrow question: its significance lies in the recognition that, by the passage of time, the Commission has succeeded in denying, on the basis of the content of the Committee's message, whatever benefits endorsement would add to its parade. The Court is not happy to acknowledge this result; but such acknowledgment does not alter its responsibilities in passing upon a request for injunctive relief. Such a request is addressed to the future, not to the past. Since the Court cannot perceive any meaningful benefits inuring to plaintiffs' parade on June 26 from the conferral of endorsement on June 25, it will not exercise its extraordinary powers of injunction as to this aspect of the action.

■ The Commission denied endorsement to the Prayer Vigil for lack of a Bicentennial nexus. The Committee's June 18 proposal describes the vigil as memorializing Gay victims of the Holocaust. Since this does not appear to have a direct relation to Bicentennial themes, and since the plain-

tiffs have called the Court's attention to no similar projects endorsed by the Commission, the Commission's refusal of endorsement appears to be a permissible exercise of its discretion.

■ Endorsement was denied to Gay Pride Day, according to the June 23 letter, because the Commission endorses projects only, not "days" as such. According to one of the Commission's brochures introduced into evidence at the June 1 hearing, however, one project that has received Commission endorsement is International Women's Year Equality Day. Thus, the explanation offered for the Commission's denial of endorsement is without foundation. Since the celebration of Gay Pride Day is closely related to the Congress of People With Gay Concerns and the Gay Pride Day Parade, both of which have a Bicentennial nexus, and since a similar project has already been endorsed by the Commission, endorsement of Gay Pride Day also seems warranted. For reasons stated above, however, the Court feels it inappropriate to require the Commission to endorse "Gay Pride Day" at this late date.

■ The Commission refused endorsement of Gay Pride Week because of a lack of a connection to Bicentennial themes, and it does indeed appear that the connection of Gay Pride Week with those activities having a clear Bicentennial nexus is more tenuous than that of a single Gay Pride Day. Moreover, the Commission does not appear to have ever endorsed a similar project. Denial of endorsement for this aspect of the plaintiffs' proposal, therefore, does not appear to be an abuse of the Commission's discretion.

For the foregoing reasons, the Court concludes that the criteria for issuance of a preliminary injunction, enjoining the defendant Rhode Island Bicentennial Commission from refusing to endorse The Congress of People With Gay Concerns and grant the plaintiffs use of the Old State House on Saturday, June 26, 1976, between the hours of 9:30 and 11:00 a. m., have been satisfied. An order will be entered to that effect.