George F. HEWITT, Plaintiff,

v.

Alphonse E. D'AMBROSE, Personnel Director, Department of Personnel et al., Defendants.

No. 75 Civ. 5527 (WCC).

United States District Court, S. D. New York.

July 29, 1976.

Samuel Resnicoff, New York City, for plaintiff.

W. Bernard Richland, Corp. Counsel, New York City, for defendants.

CONNER, District Judge:

On October 3, 1975, plaintiff George F. Hewitt (Hewitt) was summarily discharged from his position with New York City's Department of Sanitation for failure to meet age requirements. Hewitt, who had been employed by the Department of Sanitation for approximately twenty months, claims that his satisfactory completion of a six-month probationary period invested him with a property interest in the job and that his employment therefore could not thereafter be terminated in the absence of the procedural safeguards outlined in cases such as *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and guaranteed by the Due Process Clause of the fourteenth amendment. Asserting that defendants' refusal to afford him a pretermination hearing denied him these safeguards, on November 5, 1975 Hewitt commenced this action for injunctive and declaratory relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3), (4).

Presently before the Court is Hewitt's motion, pursuant to Rule 56 F.R.Civ.P., seeking a summary judgment (1) declaring his termination illegal and (2) ordering his reinstatement. Since the record before the Court discloses that "there is no genuine issue as to any material fact," Rule 56(c) F.R.Civ.P., we conclude, for reasons outlined in detail below, that a summary judgment is indeed appropriate in this case.

### THE UNDISPUTED FACTS

In late 1969, the Civil Service Commission of the City of New York (CSC) announced that on January 31, 1970 it would hold an open competitive civil service examination for the position of "Sanitation Man (Street Cleaner)." The announcement specified the following age requirement:

"[O]pen only to persons who shall not have passed their 30th birthday on the date of the written test."

However, those who had served in the military were permitted to

"deduct the length of time, not exceeding a total of six years, which they spent in [the] military * * * from their actual age in determining their eligibility."

Hewitt, a veteran of approximately twenty months in the United States Army, was thirty-three years, three months and sixteen days old when the test was given. Thus, even deducting the time spent in military service from his actual age, Hewitt was more than one-and-one-half years past his thirtieth birthday on the scheduled date of the test.

Nevertheless, in December 1969, Hewitt filed an application to compete in the examination. In his application, he correctly set forth his date of birth and the fact that he had served in the military. The application

did not request, nor did Hewitt volunteer, specific information regarding the duration of his tour in the military.

Hewitt received a sufficiently high score on the examination to be placed on a list of eligibles for appointment as a Sanitation Man. Thereafter, in June 1973, a vacancy arose in the Department of Sanitation and Hewitt was "certified" by the CSC for "appointment" as a probationary Sanitation Man.

In the interim, Hewitt had taken and passed a competitive civil service examination for employment as a "Custodial Assistant" with the Department of Social Services. He began serving in that capacity May 18, 1970.

On July 6, 1973, as a condition precedent to his appointment as a Sanitation Man, Hewitt executed a form entitled "Terms and Conditions of Certification and Appointment" in which he acknowledged his understanding that his certification and appointment were subject to a subsequent investigation of his qualifications, including those set forth in the advertisement of the examination; failure to satisfy any of the qualifications, it was explained, would result in the revocation of certification and appointment. That form is a necessary counterpart of the CSC's practice of postponing its investigation of a candidate's basic qualifications, such as age and education, until after the candidate's actual appointment.

Defendants state, and Hewitt does not dispute, that it would be an administrative impossibility to screen properly all applicants prior to testing, certification or even ultimate appointment, without significant delays in the appointment process. Rather than subjecting the city agency, which is in need of an employee, and the potential civil servant, who is typically in need of employment, to the delay of an often extended investigation, the CSC has opted for a policy of appointment subject to subsequent investigation.

Two weeks after executing the "Terms and Conditions of Certification and Appointment" form, Hewitt resigned from his position as a Custodial Assistant to accept appointment as a Sanitation Man. Hewitt satisfactorily completed a required six-months' "probationary" period and on January 22, 1974 became a "permanent" employee by operation of Section 4.5(a)(3) of the New York Code of Rules and Regulations, Civil Service.

Twenty months after attaining permanent employee status, by notice dated September 2, 1975, Hewitt was advised that he had been found "not qualified" for his position by reason of being "[o]ver age on date of written test." He was further advised that his department had been requested to terminate his employment and that the "decision" could "be appealed in writing to the [CSC] * * * within thirty (30) days * * *."

Three weeks later, on September 23, 1975, Hewitt filed, through counsel, a 1½-page written appeal which recounted the circumstances of Hewitt's appointment and asserted that his summary dismissal, "without stated charges and without a hearing," was illegal. He requested a hearing.

On October 3, 1975, Hewitt's employment was terminated. On October 22, 1975 his appeal was denied. This action followed.

## RIGHT TO DUE PROCESS

■ Defendants take vehement exception to Hewitt's claim that expiration of the six-month probationary period, and his attainment of "permanent" employee status, vested him with a "property interest" in his job and thus entitled him to the protection of the Due Process Clause. Defendants place principal reliance upon New York Civil Service Law Section 50(4), which provides, in pertinent part, that the CSC may conduct a post-appointment investigation of the qualifications and background of an "eligible" and

> "may revoke such eligible's certification and appointment and direct that his employment be terminated, provided, however, that no such certification shall be revoked or appointment terminated more than three years after it is made, except in the case of fraud."

It is defendants' position that, once Hewitt's age disability was uncovered, Section 50(4) operated to strip him of his certification, appointment and tenure *ab initio,* so that "[n]o provisional appointment ripened here to permanent appointment."

That contention has been rendered unsupportable by the recent decision in *Berns v. Civil Service Commission,* 537 F.2d 714 (2d Cir. 1976), involving a police administrative aide who had been discharged for failure to meet educational requirements. As in this case, subsequent to satisfactory completion of the specified probationary period, the plaintiff was notified that her employment would be terminated. After a written appeal was rejected and a demand for a hearing was denied, the plaintiff instituted an action in this Court to have her termination invalidated.

In the course of reviewing Judge Tenney's decision declaring the plaintiff's termination illegal, the Court of Appeals, *per* Judge Lumbard, ruled that the summary dismissal of a civil service employee who had completed his probationary period and who contested the grounds of his dismissal was violative of such employee's fourteenth amendment right to procedural due process.

Looking to the applicable state law, see *Bishop v. Wood,* —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Vega v. Civil Service Commission,* 385 F.Supp. 1376 (S.D. N.Y.1974), *vacated as moot,* Docket No. 75–7007 (2d Cir. 1975), the court concluded that, by satisfactorily completing the probationary period, the plaintiff obtained a "property interest" in her job as well as an "enforceable expectation of continued public employment," *Bishop v. Wood, supra; Berns v. Civil Service Commission, supra,* at 716, which employment could not "thereafter be terminated in the absence of procedural safeguards, including, at a minimum, a pre-dismissal hearing of the charges made against her." *Berns v. Civil Service Commission, supra,* at 716 (citations omitted).

Rejecting the identical "revocation *ab initio*" argument urged in this case, the court stated:

"This requirement of a predismissal hearing is not altered by the provisions of New York Civil Service Law § 50(4) which permit the CSC to investigate the qualifications of an employee after appointment and to revoke the appointment upon finding facts which if previously known would have disqualified the appointee. Appellant argues that Berns was never properly accorded permanent employee status because, had it known the facts of her educational background when it received her application, she would not have been certified to take the December 1972 examination. Therefore, the CSC contends, revocation of that certificate subsequent to the examination makes her appointment void *ab initio.* We disagree.

\*   \*   \*   \*   \*   \*

"Since state law provides that the mere passage of time accords to Berns an enforceable property interest in her job and, in these circumstances, the CSC could not have deprived her of a hearing by declaring her appointment void *ab initio,* her dismissal without a hearing must be vacated as a violation of her right to due process." *Berns v. Civil Service Commission, supra,* at 716–17.

The facts relevant to Hewitt's asserted entitlement to due process are indistinguishable from the controlling facts in *Berns.* On the basis of the binding precedent of that case, we therefore conclude that Hewitt, having satisfactorily completed his probationary period and having achieved "permanent" employee status, was entitled to all of the procedural safeguards guaranteed by the fourteenth amendment.

The undisputed facts, as outlined above, also reveal that, despite his tenured status, Hewitt was not afforded even the "minimum" procedural safeguard of a predismissal hearing at which he could challenge the propriety of his termination. *Berns v. Civil Service Commission, supra,* at 716. Although Hewitt concedes that, under the age limits fixed by CSC regulation, he was overage on the date of the examination, he suggests an assortment of other arguments

which assertedly militate against his dismissal. For example, Hewitt argues that the application of Section 50(4), under the authority of which defendants seek to terminate Hewitt's employment, is not mandatory but is subject to the discretion of the CSC and that, under the circumstances of this case, such discretion should be exercised in Hewitt's favor. It is also claimed that the CSC and the Department of Personnel had actual or constructive notice of Hewitt's age and that having failed to act on that notice until after Hewitt's resignation from another tenured civil service position, they are estopped from complaining of his age. In addition, our Court of Appeals and at least one New York State court have indicated that, absent a question of fraud or bad faith, Section 50(4) would not authorize revocation of Hewitt's certification unless his overage bore substantially upon his basic qualification or upon the purposes and effectiveness of the civil service system. *Berns v. Civil Service Commission, supra,* at 717; *Kelliher v. New York State Civil Service Commission,* 21 Misc.2d 1034, 194 N.Y. S.2d 89, 95 (Sup.Ct. Dutchess Co. 1959).

It is the judgment of this Court that Hewitt's summary dismissal, without prior notice or opportunity to be heard, was illegal and we direct that pending a hearing, at which Hewitt may present evidence in support of his retention, he be reinstated.

In order to avoid any possible confusion as to the scope of this ruling, it is stressed that we are not requiring Hewitt's permanent reinstatement. Nor are we indicating that this Court will consider, nor are we even implying any opinion as to the merits of, the legal, factual and equitable arguments suggested above.

■ Although the federal courts are charged with the enforcement of due process rights, it by no means follows that, once a violation of due process is found, the federal courts will consider the merits of the underlying dispute. We require merely that any termination of Hewitt's employment be preceded by a hearing according him due process of law.

Although this conclusion is contrary to the inviting authority of Judge Knapp's much, cited decision in *Vega v. Civil Service Commission, supra,* we believe it is mandated by the Second Circuit's decision in *Berns.* Judge Knapp's decision, of course, antedated *Berns.*

In all significant respects, the facts in *Vega* are four-square with those of the instant case. In *Vega,* the CSC had announced an examination for the position of "Correction Officer." The announcement provided, *inter alia,* as follows:

"Applicants must have passed their twentieth birthday but not their thirty-second birthday on the date of filing their application for civil service examination (date of written test)."

As in the present case, periods spent in military service, not exceeding six years, could be deducted from actual age in determining eligibility. Also, as in this case, the plaintiff, although exceeding the maximum age, filed an application for and competed in the examination; he was ultimately appointed a Correction Officer. On the day of his appointment, Vega signed a "Terms and Conditions of Certification and Appointment" form identical to the form executed by Hewitt. On the same day, Vega resigned from a different civil service position.

After having satisfactorily completed his probationary period, Vega "was summarily dismissed from his position without charges and without a hearing, because he had been found 'not qualified' due to 'overage on the date of the written test'. Plaintiff appealed the revocation of his certification within the Commission, but to no avail." 385 F.Supp. at 1379.

Vega thereafter brought a civil rights action in federal court and quickly moved for a summary judgment, claiming

"(1) he was not in fact over age when he filed his application to compete in the examination, and (2) even if he were, the defendants are now estopped from so claiming in that he achieved tenure by being permitted to remain on his job be-

yond the probationary period." 385 F.Supp. at 1379.

Although eschewing the first contention here, Hewitt's counsel, as he did in *Vega,* asserts that

"Defendants are guilty of gross and inexcusable laches. Even assuming that plaintiff attempted to perpetrate a fraud (which of course is non-existent here), defendants would be estopped."

After rejecting, as unfounded, Vega's initial argument, Judge Knapp addressed the second contention. Judge Knapp concluded, and *Berns* vindicates his belief, that

"[h]aving satisfactorily completed his probationary period and achieved permanent tenured status, plaintiff's 'property interest' in his job was entitled to the full panoply of procedural safeguards afforded by the Fourteenth Amendment." *Vega v. Civil Service Commission, supra,* at 1382 (citations omitted).

Judge Knapp, however, proceeded to rule on the merits of Vega's estoppel argument. At that point, instructed by *Berns,* we must part company with *Vega.*

In *Berns,* there was a clear-cut factual dispute between the plaintiff and the CSC. As noted above, the plaintiff was terminated for failure to meet the educational requirements, *i. e.,* a high school diploma or its equivalent. The plaintiff, however, claimed that she had satisfied this requirement.

After finding that the plaintiff was a tenured employee who could not be dismissed without a prior hearing, Judge Tenney, like Judge Knapp, proceeded to hold the hearing. Ruling that the plaintiff's education was sufficient to entitle her truthfully to claim the equivalent of a high school diploma, Judge Tenney permanently enjoined the CSC from removing her from employment for failure to meet educational requirements.

Reversing the injunction order, the Court of Appeals ruled that once the plaintiff's summary discharge was vacated

"the federal interest in this litigation cease[d]. Judge Tenney apparently

thought that a determination of whether Berns' educational background provided the equivalent to a high school diploma was essential to the question of whether she was entitled to any due process rights. He therefore addressed the issue and decided it in appellee's favor. However, as we have concluded that in this situation appellee's status as a permanent employee conferred a right to a pre-termination hearing upon her, we find no need or jurisdictional basis for the federal court to determine whether Berns possessed the equivalent of a high school diploma. That question is exclusively one of state law to be addressed by the CSC in the first instance and by the state courts. A federal court is not qualified to determine the significance that New York will lend to Berns's educational background and, as the question is unrelated to enforcement of her due process rights, no independent federal ground exists for us to usurp the state's function in this matter. As this court 'is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies,' *Bishop v. Wood,* supra, —— U.S. at ——, 96 S.Ct. at 2080, we must decline to instruct state agencies as to what constitutes compliance with their own regulations.

"We therefore reverse that part of Judge Tenney's decision that permanently enjoins the CSC from relitigating the adequacy of Berns's educational background and from dismissing her for failure to meet educational requirements. We require only that any attempt to dismiss appellee be preceded by a hearing at which she or her counsel may present arguments and facts in support of her alleged satisfaction of eligibility regulations." *Berns v. Civil Service Commission, supra,* at 717–18 (footnote omitted).

Hewitt's motion for summary judgment is granted to the following extent:

(1) The termination of Hewitt's employment is declared to be illegal and void;

**972**

(2) Defendants are directed forthwith to reinstate Hewitt to active duty as a sanitationman, pending a hearing on the merits of such termination.

To the extent that Hewitt seeks to invoke the jurisdiction of this Court to conduct such a hearing, summary judgment is denied, and the complaint is dismissed.

SO ORDERED.