**Manuel Munoz VARGAS, et al.
Plaintiffs,**

v.

**Carlos Romero BARCELO, Mayor
of San Juan, Defendant.**

**Civ. No. 167–69.**

United States District Court,
D. Puerto Rico.

Nov. 8, 1974.

Luis Muñoz Rivera, Hato Rey, P. R., for plaintiffs.

Harvey B. Nachman, Nachman, Feldstein & Gelpi, San Juan, P. R., for defendant.

## OPINION AND ORDER

TURK, District Judge, Sitting by Designation.

This is a class action suit brought by seventeen named plaintiffs on behalf of themselves and others similarly situated against Carlos A. Romero Barcelo, the Mayor of San Juan, Puerto Rico. This suit was initially filed in March, 1969, at which time the Municipality of San Juan responded as the defendant and moved to have the complaint dismissed. The court construed the suit as being against the Municipality of San Juan and dismissed it for failure to state a claim upon which relief could be granted

because the city was not subject to suit under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. On appeal plaintiffs asserted that the Mayor in his individual capacity was the intended defendant, and on the basis of this representation, the Court of Appeals reversed and remanded this case with directions to permit plaintiffs to pursue their suit against the defendant of their choice. Vargas v. Barcelo, 435 F.2d 843 (1st Cir. 1970).

Thereafter, plaintiffs filed an amended complaint against the Mayor of San Juan. The case is now before the court pursuant to defendant's motion to dismiss this complaint on various grounds including the failure to state a claim upon which relief may be granted.[1]

Plaintiffs were employed by the Municipality of San Juan as "Inspectors" and pursuant to Section 91 of the Municipal Law of Puerto Rico had "tenure" in these jobs. During the 1968 campaign for Mayor of San Juan, the defendant raised as a campaign issue the propriety of maintaining these positions for which $164,736 had been budgeted for the 1968–1969 fiscal year. Defendant asserted in the campaign that the plaintiffs' jobs were not defined in terms of hours or duties and in fact plaintiffs were simply active party workers for the Popular Democratic Party.[2]

Following his election as Mayor, the defendant recommended and the Municipal Assembly enacted Ordinance No. 95, Series 1968–1969, which abolished the jobs held by plaintiffs. The ordinance stated in part:

"WHEREAS, there is at present a lack of funds in the budget of the Municipal Government of San Juan;

"WHEREAS, as the result of an analysis made of the budget in effect, it has been that there exists 43 positions designated "Municipal Inspectors" with classifications I, II, III, and IV in the list of positions of the Office of Executive Assistant, whose functions are not vital for the good administration of this Municipal Government;

. . . .

Despite the stated reason in the ordinance for the elimination of the jobs held by the plaintiffs, plaintiffs contend that the defendant "caused" the ordinance to be adopted because of their active support for the Popular Democratic Party in the 1968 electoral campaign. Plaintiffs assert that this violated their rights secured by the First, Fifth and Fourteenth Amendments by abridging their rights to expression and association and by denying them procedural and substantive due process of law.[3] They ask the court to declare the ordinance unconstitutional as applied; to order their reinstatement with back pay; to grant them $25,000 in damages plus costs and attorneys fees; and to enjoin defendant from interfering with their permanent status as municipal employees.

In ruling on the defendant's motion to dismiss, the court deems it crucial to

1. Defendant also raises the defenses that he is immune from personal liability; that the court is without jurisdiction or power to grant the relief requested; and that the court should abstain from deciding the constitutionality of the ordinance. Because of its disposition of this case, the court does not decide the other grounds asserted.

2. Although not necessary to this decision, the plaintiffs' answers to interrogatories underscore the political issue in this case. The plaintiffs stated that no examination was required for their jobs, no work records were maintained and they actively worked for the Popular Democratic Party. They describe their jobs as follows:

"My work as a municipal inspector was that of observing and reporting my observations. I was to observe the progress of the municipal works in the district assigned to me; to observe the municipal services that were being rendered in that district, and the needs of providing such services as street repairs and garbage collection and the (sic) report to the mayores and other municipal officials my observation or needs."

3. Plaintiffs also contend that the application of the ordinance was in violation of Article II, Sections 1, 2, 4, 6 and 7 of the Constitution of Puerto Rico.

state exactly what is and what is not involved in this case. Plaintiffs are challenging the effect of a municipal ordinance, enacted by the Municipal Assembly of San Juan and signed and executed by defendant as the elected Mayor of that city. The ordinance eliminated certain government jobs—ostensibly for reasons of economy but allegedly for reasons of political revenge. This case does not involve the dismissal of persons from certain jobs, but rather is a challenge to the consequential effect on certain individuals resulting from the total elimination of job categories which they occupied.

The court fails to perceive how the actions of the defendant in advocating the elimination of certain jobs and in thereafter signing and executing the ordinance denied plaintiffs procedural due process. The decision to eliminate the jobs in question did not stigmatize the individuals holding those jobs so as to amount to a loss of their liberty. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The actions of the defendant Mayor and the Municipal Assembly have perhaps cast discredit upon the jobs which were eliminated and perhaps even discredited the prior administration which had created those jobs; however, it seems extremely remote that any stigma would attach to the individual plaintiffs. This is, of course, particularly so in light of the stated purpose for the ordinance.

Plaintiffs allege that they had "tenure" in their jobs, and thus present the question of whether the actions of the defendant deprived them of a property interest without due process of law. Had plaintiffs been fired from their jobs, there is no doubt that notice and a hearing would have been required. But plaintiffs were not fired, rather their jobs were eliminated. Although to a person who finds himself without a job, this may not seem to be a distinction of great significance, in terms of the constitutional limits on governmental action it is a distinction dispositive of plaintiffs' procedural claim. In a case in which executive action is taken to terminate an individual from a job in which he has a property interest, the courts can and will require that such an interest not be taken without due process of law. Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In such a case, the individual is afforded notice, an evidentiary hearing and reasons for the action taken. However, the case at bar in which certain jobs were eliminated by legislative action is obviously different. The "process" which was "due" in this case was simply that the legislation in question be duly enacted and executed. Notice was provided when the ordinance was proposed, the hearing took place in the Municipal Assembly among the elected assemblymen, and the result of the hearing was the ordinance. Plaintiffs may, of course, appeal the decision by way of the electoral process, but the court is aware of no reason or authority why as a matter of procedural due process elected representatives should have to otherwise justify their decision to the individuals holding public jobs which are eliminated.

Plaintiffs have also challenged the defendant's actions and thereby the application of the ordinance on the substantive grounds that their rights of expression and association were unconstitutionally infringed. This allegedly occurred because plaintiffs were all active members of the Popular Democratic Party; that one of defendant's campaign issues was that of abolishing their jobs because of the political activity performed; and that after being elected, defendant recommended and then signed and executed the ordinance abolishing the positions.

Insofar as plaintiffs are challenging the ordinance on the basis that it was in fact motivated by political revenge and not as an economy measure as stated, their challenge is without merit. In this respect, the case of United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) is instructive. In that case, the defendant had burned his

draft card to protest the war and was convicted under a statute which made it a crime to knowingly destroy a draft card. One of the grounds upon which he challenged his conviction was that the statute which he was convicted of violating had been enacted in order to suppress the type of political expression in which he had engaged. The court refused to consider the allegedly improper legislative motive behind the otherwise valid statute and reaffirmed the proposition stated in McCray v. United States, 195 U.S. 27 at 56, 24 S.Ct. 769, at 776, 49 L.Ed. 78 (1904):

> "The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."

The Court in *O'Brien* distinguished cases in which statutes had been found to be unconstitutional because the "inevitable effect" of the statutes had infringed constitutional rights. *E. g.*, Grosjean v. American Press Co., 297 U.S. 233, 56 S. Ct. 444, 80 L.Ed. 660 (1936); Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). No such claim can be made in this case—the ordinance in question did not inhibit the plaintiffs' ability to associate and express themselves politically. It did have the effect of preventing them from receiving public funds for their political activity, but obviously this does not infringe their constitutional rights. In short, the court in this case is faced with an ordinance enacted at the defendant's behest which on its face and in terms of its effect is clearly within the constitutional bounds of legislative action. The court is accordingly of the opinion that plaintiffs' allegations of improper motive may not be further considered.

In effect, plaintiffs are here seeking the aid of the court to insulate a spoils system of which they were beneficiaries in a shroud of constitutional protection. In the recent case of Illinois State Employees Union, Council 34 etc. v. Lewis, 473 F.2d 561 (7th Cir. 1972), cert. denied, 410 U.S. 928 and 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973), the court reversed the granting of summary judgment for defendant in a suit brought by lower-level non-civil service employees, who had alleged that they were discharged for failing to support the partisan political position of their superiors. The court rejected as an absolute proposition defendant's position that active support for the party in power could be made a condition of employment for all non-tenured employees and remanded the case in order that plaintiffs be given an opportunity to prove their allegations that they had been dismissed for unconstitutional reasons. Even accepting the correctness of *Lewis* despite the strong precedent to the contrary, *e.g.*, Nunnery v. Barber, 503 F.2d 1349 (4th Cir. 1974); Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971), cert. denied, 404 U.S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972), the case at bar is readily distinguishable. In *Lewis* the plaintiffs were allegedly dismissed because of their political allegiance where as here plaintiffs were dismissed because their jobs no longer existed. Although plaintiffs would perhaps be entitled to their day in federal court if they had simply been summarily fired from their jobs, it is fanciful to suggest that the Constitution prevents a legislative body from abolishing patronage jobs entirely—or that one political administration could give such jobs a "tenured" status and thereafter through the courts maintain power despite adverse election results and legislation to the contrary.

On the basis of the reasons and authority stated, it is the considered opinion of this court that plaintiffs' amended complaint fails to state a claim upon which relief can be granted, and it is accordingly ORDERED that the complaint be dismissed with prejudice.