Donald Wayne GRAHAM, Plaintiff

v.

Byron E. HANER, Defendant.

Civ. A. No. 76–0164.

United States District Court,
W. D. Virginia.

Dec. 22, 1976.

Fergus B. Norton, Roanoke, Va., for plaintiff.

William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

DALTON, District Judge.

This action is currently before the court on defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both parties to the suit have presented various memoranda, affidavits, depositions, and exhibits in support of their respective positions. Accordingly, the court now considers defendant's motion as one for summary judgment under Rule 56 of the Federal Rules, pursuant to the requirements of Rule 12(b).

## STATEMENT OF THE FACTS

The plaintiff, Donald Wayne Graham, was hired in 1970 as Director of Personnel for the City of Roanoke. While his job title was later changed to Manager of Personnel and Training, Mr. Graham's responsibilities remained essentially the same. The plaintiff was initially hired by the then City Manager of the City of Roanoke, Julian Hirst. However, City Manager Hirst was later replaced by the defendant, Byron E. Haner, who was serving as City Manager of Roanoke at all relevant times for purposes of this proceeding.

The record developed in this case reveals that a certain degree of friction developed between Graham and Haner, which primarily revolved around Graham's conduct of personnel affairs.[1] Plaintiff now contends that such friction resulted in certain sanctions being imposed upon him by City Manager Haner. It is uncontradicted that plaintiff did not receive a merit evaluation or pay increase in July of 1975, despite the apparent fact that other city government officials received such an increment. Furthermore, plaintiff was suspended without pay for six days in February, 1976, by action of defendant. Finally, by letter dated June 2, 1976, the defendant notified plaintiff that the latter's employment with the City of Roanoke would be terminated as of June 18, 1976.

Plaintiff now contends that defendant's course of conduct creates a cause of action under the Civil Rights Act, 28 U.S.C. § 1343, 42 U.S.C. §§ 1983, and 1985. Plaintiff further alleges that the aforementioned conduct of the defendant operated so as to deprive plaintiff of property rights and liberties secured under the Constitution and laws of the United States. Plaintiff does not allege infringement of any rights of expression, protected under the First Amendment. Defendant's motion to dismiss is grounded on the assertion that the termination of plaintiff's employment was effected by the Roanoke City Council's general budgetary reduction for the fiscal year commencing on July 1, 1976. Defendant further contends that plaintiff had no property interest in his job, subject to protection under the Due Process Clause of the Fourteenth Amendment.

## RESOLUTION OF THE ISSUES

█ The court has determined that summary judgment must be entered for the defendant. The primary issue raised in plaintiff's complaint is whether the termination of plaintiff's employment was occasioned by illegal action of the defendant. Plaintiff relies heavily on the circumstance that under Section 7 of the Roanoke City Charter, only the City Manager has authority to control appointments of employees in the City's administrative service. Thus, plaintiff reasons that termination of employees is the sole responsibility of the City Manager. Plaintiff's argument is correct inasmuch as it relates to the power of the City Manager to decide which specific individuals should or should not be retained in the city administration. However, in the instant case, the record clearly reveals that the *position* occupied by plaintiff was eliminated by action of the city's duly elected governing body.

Under the Roanoke City Code, the City Manager is charged with the responsibility to present a proposed annual budget to the Roanoke City Council for consideration. Under Section 33 of the Roanoke City Charter, the City Manager is required to produce a balanced budget. In his Budget Message for the fiscal year commencing on July 1, 1976, City Manager Haner recognized a need for a reduction of the number of classified employees in the city's service in order to assure a balanced budget for the upcoming fiscal year.[2] Apparently, such recommendation initially created some confusion among City Council members as to

1. See discovery depositions dated October 6, 1976 and affidavits of Rex T. Mitchell, John A. Newson, and David K. Lisk, dated October 7, 1976, October 7, 1976 and October 14, 1976 respectively.

2. See City Managers Budget Message, p. 7, appearing as Exhibit A to Memorandum in Support of Defendant's Motion to Dismiss.

the best means to achieve the desired end.[3] However, on June 23, 1976, the Roanoke City Council passed a resolution directing the City Manager to limit the number of classified employees to no more than 1,655 persons.[4] On the same day, the Council enacted an ordinance providing for appropriations for the upcoming fiscal year.[5] Incorporated in the ordinance were breakdowns of the expenditures and salaries for personnel in each department of the city. These calculations reveal that no appropriation was made for the position of Manager of Personnel and Training.

 The court is unable to discern any deprivation of plaintiff's right to procedural due process, occasioned by defendant's conduct or otherwise. In certain instances and assuming a requisite property interest, an individual may experience an illegal denial of procedural safeguards when fired from a job. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1973). Had plaintiff been removed from a continuing position, plaintiff would undoubtedly have been entitled to a review of the termination under the City of Roanoke grievance procedure, upon proper petition by plaintiff.[6] However, the elimination of a position presents an entirely different situation. Indeed, the distinction between the two sets of circumstances must prove dispositive of plaintiff's claim of procedural inadequacies in the instant controversy. Clearly, a governmental unit may alter the structure of its administration.[7] The only due process

requirement is that the change be duly enacted and executed. *Vargas v. Barcelo,* 385 F.Supp. 879 (D.C. Puerto Rico, 1974), aff'd 532 F.2d 765 (1st Cir., 1976). Plaintiff does not contend that the aforementioned appropriations ordinance was not duly enacted. Moreover, plaintiff does not contend that he had a contract of employment with the City which would have prohibited the elimination of his position. Absent such circumstances and absent an allegation of infringement of First Amendment rights of expression, the court is unaware of any authority supportive of the proposition that a duly authorized city reorganization can be violative of Constitutional due process safeguards.

 Plaintiff apparently attempts to rebut the above premise with the vague allegation that defendant manipulated Roanoke City Council so as to assure plaintiff's termination. However, the fact remains that City Council declined to appropriate the necessary funds for the continuation of the position of Manager of Personnel and Training. While the City Council undoubtedly relied to a certain extent on the City Manager's recommendations, the final decision rested exclusively with City Council. Appropriations are solely within the province of City Council. There is no requirement, Constitutional or otherwise, for the City Council to assign reasons for the allocation or nonallocation of funds. Moreover, the record reveals that numerous other classified positions were eliminated as a result

3. It would seem that at least one member of City Council believed that Council had decided to eliminate personnel through natural attrition. See affidavit of David K. Lisk, appearing as an exhibit to plaintiff's Memorandum of Fact and Law in Opposition to Defendant's Motion to Dismiss.

4. See Roanoke City Council Record Entry No. 23036, June 23, 1976, appearing as Exhibit C to Memorandum in Support of Defendant's Motion to Dismiss.

5. See Roanoke City Council Record Entry No. 23037, June 23, 1976, appearing as Exhibit D to Memorandum in Support of Defendant's Motion to Dismiss.

6. Code of the City of Roanoke, 1956, as amended; Chap. 13, Title II. The court notes that the

City of Roanoke grievance procedure is more comprehensive than that involved in several cases cited by defendant. In the recent U. S. Supreme Court case of *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) aff'g 498 F.2d 1341 (4th Cir., 1974), an employee of Marion, North Carolina was found to have been properly dismissed when serving only at the will and pleasure of the city. However, the only procedural safeguard was that the affected employee be given a written notice and reasons for the discharge.

7. Under the Roanoke City Charter, § 23, the City Council is granted such control of administrative structure.

of the reorganization implemented through the appropriations ordinance.[8] It is true that the duty to notify the affected employees fell to the defendant. Whether the City Manager did or did not enjoy his task is irrelevant. Plaintiff's position was to be no longer existent. The defendant's letter apprising Mr. Graham of this circumstance does not create a cause of action against the City Manager. The court must conclude that the termination of plaintiff's position was the direct result of unilateral action of the Roanoke City Council.

██ Even assuming that plaintiff might in some way establish that defendant was to some degree responsible for plaintiff's termination, plaintiff's claim of due process infringement must still fail. Plaintiff has not alleged any conceivable grounds under which it might be found that plaintiff had a property interest in his employment position. Clearly, to maintain an action under the due process clause of the Fourteenth Amendment, a discharged public employee must establish that he has been deprived of a legitimate "property" or "liberty" interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As previously noted, plaintiff does not allege that he had an employment contract with the city of Roanoke such as would prohibit termination of employment. Moreover, the record reveals that plaintiff had not qualified for vested rights under the City's pension plan.

In attempting to establish the requisite property interest, plaintiff goes to considerable length to distinguish other cases in which it was found that a city employee had no property interest in continued employment with a municipality. In an earlier case, this court interpreted the Roanoke City Code to the effect that Roanoke City employees serve at the will and pleasure of the City and are thus subject to dismissal, absent active infringement of some consti-

tutionally protected right. *Brown v. Hirst,* 322 F.Supp. 236 (W.D.Va., 1971) aff'd 443 F.2d 899 (4th Cir., 1971) *cert. denied* 404 U.S. 1040, 92 S.Ct. 720, 30 L.Ed.2d 732 (1972). However, plaintiff contends that the earlier rule of law is now inapplicable, due to certain revisions in the Roanoke City Employee Grievance Procedure. In 1974, the City of Roanoke altered its grievance structure so as to conform to certain statutory requirements enacted in 1973 by the Virginia General Assembly. Stated briefly, the new law required cities and towns with more than fifteen employees to adopt uniform grievance procedures so as to provide an equitable method of resolving differences between a municipality and its employees. See *Va. Code* § 15.1–7.1.

Both parties to this action agree that the Grievance Procedure adopted by the City of Roanoke does not provide for final resolution of employee terminations by a duly constituted Personnel Board. Under the Roanoke plan, the Personnel Board presents its findings and recommendations to the City Manager for final resolution. Plaintiff argues that under Section 15.1–7.1 of the Code of Virginia, dismissals or removals in Virginia cities such as Roanoke can be effected only by a Personnel Board. Plaintiff further contends that the Roanoke Grievance Procedure is invalid inasmuch as it varies from the model procedure incorporated by Section 15.1–7.1 of the Virginia Code.[9] Plaintiff apparently alleges that the existence of such a grievance procedure creates a "property interest" in continued employment on behalf of all covered employees.

██ It is extremely difficult for the court to determine how plaintiff may advance a claim of violation of due process safeguards when in fact plaintiff did not attempt to take advantage of the existing

---

**8.** See Affidavit of James N. Kincannon, appearing as Exhibit A to Reply Memorandum in Support of Defendant's Motion to Dismiss.

**9.** Section 15.1–7.1 incorporates grievance procedures adopted by the Governor of Virginia, as provided under Section 2.1–114, as a standard of reference.

grievance procedure.[10] In any event, plaintiff misconstrues the impact of the grievance procedure as it relates to the question of existence of a "property" interest. The Fourth Circuit has recently considered an employee termination in the City of Portsmouth in which the firing was upheld by the City Manager despite the City Merit Council's recommendation for reinstatement. *Prince v. Bridges,* 537 F.2d 1269 (4th Cir., 1976). In describing the property interest that arose on behalf of the plaintiff Prince, the Fourth Circuit commented as follows:

Thus, although Mrs. Prince contends that the *merit plan itself* fails to insure that arbitrary and unjustified terminations can be corrected by the Merit Council, we hold that she has not been deprived of a "property" interest protected by the fourteenth amendment because she has received all the protection the merit plan provides. *Prince v. Bridges, supra.*

The only property interest that Mr. Graham might have had in continued employment was the statutorily protected right to have his termination reviewed under the appropriate grievance procedures. See *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). If, as plaintiff contends, the defendant was solely responsible for plaintiff's termination, plaintiff had a clear right to review by the City Personnel Board. The fact that plaintiff may have viewed such a right as illusory is insufficient in itself to vest a "property" interest in plaintiff.

Plaintiff poses a rhetorical question concerning the current status of the Roanoke City Grievance Procedure as opposed to that which prevailed at the time of this court's decision in *Brown v. Hirst,* supra. In *Brown,* the city employee received benefit of a Personnel Board hearing at which time the then City Manager assigned certain specified reasons for the worker's termination. Despite the Personnel Board's unanimous recommendation for reinstate-

ment, the City Manager affirmed the original termination. In upholding the propriety of the City Manager's action in *Brown,* the court commented as follows:

Although the court may agree with the plaintiff that the hearing accorded him does not seem to have fulfilled any real purpose in that the defendant apparently paid no attention to it, his rights were not violated because the City had no obligation under the Constitution to grant him any hearing at all. 322 F.Supp. at 237.

As previously noted, the Virginia General Assembly intervened between the time of *Brown* and the development of the instant controversy. Under the aforementioned Section 15.1–7.1 of the Virginia Code, enacted in 1973, the City of Roanoke was required to adopt and apply certain grievance procedures. The statutory requirements necessitated many alterations in the existing procedures, such as the enlarging of categories of controversies which might be reached under the grievance mechanism. Most importantly, the statute required that in terminations for cause, the grievance plan must provide the affected employee opportunitiy to address the circumstances of his removal in a "full and impartial inquiry". Therein lies the distinction between the grievance plan involved in *Brown* as compared to the current grievance structure.

While the City Manager provided the employee in *Brown* with the reasons for termination, there was no statutorily protected requirement that he do so. In the instant case, plaintiff has access to a procedure whereby he was *assured access* to the circumstances involved in his dismissal. While the distinction may seem of little import to the unemployed plaintiff, the distinction is present nevertheless. In the final analysis, both Mr. Graham and plaintiff in *Brown* served at the discretion of the City Manager. The court is unable to discern any statutorily mandated requirement that the recommendation of the City Personnel

**10.** See Affidavit of Jimmie B. Layman, dated November 24, 1976, appearing as Exhibit G to Reply Memorandum in Support of Defendant's

Motion to Dismiss. The court notes that plaintiff does not allege that he attempted to initiate review proceedings before the Personnel Board.

Board should be considered dispositive. After examining the relevant grievance procedures, the court has determined that no procedural rights have been denied plaintiff. Thus, plaintiff has not been deprived of any "property" interest protected under the law. *Arnett v. Kennedy, supra.*

■ The above reasoning also applies to several other contentions raised by plaintiff. However, there is no allegation or indication that plaintiff was denied access to any procedural safeguards that existed at that time. Therefore, there is no support for the proposition that defendant's conduct operated so as to deprive plaintiff of a legitimate "property" interest. Since plaintiff's "property" interest is limited to his right to have his suspension reviewed, no denial of procedural due process occurred. The same argument applies to the circumstances regarding a denial of a merit pay increase.

■ Plaintiff also argues that the course of conduct of the defendant, statements made by the defendant, and the eventual termination of plaintiff's job operated so as to stigmatize plaintiff, thus amounting to a loss of liberty. See *Board of Regents v. Roth, supra.* However, the court is unable to perceive how the termination of employment adversely affected plaintiff's reputation. The termination of plaintiff's job was the result of City Council's apparent effort to achieve more economical city administration. Plaintiff's performance in his position was not at issue. Indeed, in his letter to plaintiff describing City Council's action, defendant suggested that Mr. Graham apply for employment in other departments of city government.[11] The City Manager may or may not have made statements reflecting on plaintiff's competence. In any case, such allegations sound in tort and must be addressed in other forums.

## SUMMARY AND DISPOSITION

It would be a most remarkable development in the law if a duly elected city governing body, acting on the advice of its chief administrator, could not effect changes in its city administrative structure without running afoul of procedural due process limitations. Yet, in essence, it is exactly such an aberration that plaintiff would pursue in this court. The court finds plaintiff's allegations of illegal conduct by the defendant in the terminaton of plaintiff's job to be without merit. Similarly, the court finds that the remaining contentions of plaintiff either fail to state a claim upon which relief can be granted or raise issues cognizable in state courts. Accordingly, it is ORDERED that summary judgment be entered in favor of the defendant and each party to bear his own costs.

---

11. See Haner letter to Graham, dated June 2, 1976, appearing as defendant's exhibit number one to discovery depositions.