**Lothar MERMELSTEIN, Plaintiff,**

v.

**Byron E. HANER, Defendant.**

**Civ. A. No. 76–0261.**

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 2, 1977.

Fergus B. Norton, Roanoke, Va., for plaintiff.

William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

DALTON, District Judge.

This action is currently before the court on defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Both parties to this action presented various memoranda, affidavits, depositions, and exhibits in support of their respective positions. Accordingly, the court now considers defendant's motion as one for summary judgment under Rule 56 of the Federal Rules, pursuant to the requirements of Rule 12(b).

## STATEMENT OF THE FACTS

The plaintiff, Lothar Mermelstein, was hired in 1970 as the Manager of Planning for the City of Roanoke. Apparently, plaintiff was hired by the then City Manager of Roanoke, with the approval and concurrence of the Roanoke City Council.[1] Subsequent to plaintiff's employment by the City, the defendant, Byron E. Haner, became City Manager. In early June of 1976, the defendant notified plaintiff that the latter's employment with the City of Roanoke would be terminated as of June 18, 1976.[2]

Plaintiff now contends that his termination was effected in violation of the formal Personnel Rules of the City of Roanoke. Plaintiff further alleges that defendant's course of conduct creates a cause of action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. Plaintiff contends that the actions of the defendant operated so as to deprive plaintiff of due process of law as secured under the Constitution and laws of the United States. Plaintiff alleges that the defendant, acting under color of law, deprived plaintiff of the property right of continued employment in violation of certain constitutionally protected procedural safeguards. Plaintiff does not allege infringement of any rights of expression, protected under the First Amendment. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1332, and 1343.

Defendant's motion to dismiss is primarily grounded on the assertion that the termination of plaintiff's employment was effected by the Roanoke City Council's general budgetary reduction for the fiscal year commencing on July 1, 1976. Defendant further contends that plaintiff had no property interest in his job, subject to protection under the Due Process Clause of the Fourteenth Amendment.

## RESOLUTION OF THE ISSUES

The court has determined that summary judgment must be entered for the

---

1. See Roanoke City Council Record Entry No. 19019, January 12, 1970, appearing as Exhibit A to Memorandum in Support of Defendant's Motion to Dismiss.

2. See discovery deposition of Lothar Mermelstein, dated March 14, 1977, at 11.

defendant. The primary issue raised in plaintiff's complaint is whether the termination of plaintiff's employment was occasioned by illegal action of the defendant. In his initial complaint, plaintiff correctly contends that specific personnel retention or non-retention is a matter generally delegated to the City Manager, pursuant to and subject to the limitations contained in Sections 7 and 21(b) of the Roanoke City Charter. In his Memorandum in Opposition to Defendant's Motion to Dismiss, plaintiff notes that such delegation is intended to segregate the administrative function of city government from the policy-making function of City Council. Given the "City Manager" form of local government that prevails in the City of Roanoke, plaintiff's observation is undoubtedly valid. However, such segregation of functions neither establishes nor implies that City Council has surrendered the authority to alter the structure of the city administration. Such alterations in the city administrative structure embody and manifest policy considerations. It is not to be unexpected that such structural alterations should sometimes involve dislocation of personnel. In the instant case, the record clearly reveals that the *position* occupied by plaintiff was eliminated by action of the city's duly elected governing body. The record further establishes that the elimination occurred as a result of the Roanoke City Council's implementation of its own policy decision to achieve budgetary reductions for the fiscal year commencing on July 1, 1976.

Pursuant to the Roanoke City Charter, the City Manager undertakes each year the preparation and presentation to City Council of a proposed annual budget for the City. Under Section 33 of the Charter, the City Manager is required to produce a balanced budget proposal. In his Budget Message containing proposals for the fiscal year commencing on July 1, 1976, City Manager Haner recognized a need for a reduction in the number of classified employees in the city's service, in order to assure a balanced budget for the upcoming fiscal year.[3] The City Manager further suggested that such reduction should apply to newly requested as well as to then existing personnel positions. The City Manager recommended elimination of one hundred forty six (146) positions. Of that number, the City Manager stated that forty six (46) were newly requested positions while one hundred (100) were already authorized. The City Manager specifically noted that many of the 100 authorized positions, proposed for deletion, were occupied as of the date of his message.

Apparently, City Council concurred in the need for reduction of personnel positions. By way of affidavit, defendant asserts that on June 1, 1976, he was authorized by council to implement a reorganization and reduction of the city work force.[4] Such assertion is documented by formal action taken by the City Council on June 23, 1976. On that day, Council passed a resolution directing the City Manager to limit the number of classified employees to no more than sixteen hundred fifty five (1,655) persons.[5] On the same day, the Council enacted an ordinance adopting a budget and providing for appropriations for the upcoming fiscal year.[6] Incorporated in the budget ordinance were breakdowns of the expenditures and salaries for personnel in each department of the city. These figures reveal that no appropriation was made for the position of Manager of Planning.

The court must conclude that the termination of plaintiff's position occurred as a direct result of action by the Roanoke City Council. The factual situation of this case

3. See Budget Message appearing as an attachment to Exhibit E to Memorandum in Support of Defendant's Motion to Dismiss.

4. See affidavit of Byron E. Haner appearing as Exhibit E to Memorandum in Support of Defendant's Motion to Dismiss.

5. See Roanoke City Council Record Entry No. 23036, June 23, 1976, appearing as Exhibit C to Memorandum in Support of Defendant's Motion to Dismiss.

6. See Roanoke City Council Record Entry No. 23037, June 23, 1976, appearing as Exhibit D to Memorandum in Support of Defendant's Motion to Dismiss.

is similar to that recently considered by this court in *Graham v. Haner,* 432 F.Supp. 1083 (W.D.Va., 1976). In *Graham,* the plaintiff's position with the City of Roanoke had also been eliminated as part of the same general budgetary reduction. In granting defendant's motion for summary judgment in *Graham,* the court noted that the City Manager could not be held responsible for the formal act of City Council which effectively eliminated plaintiff's position. In language equally applicable to the instant case, the court commented in *Graham v. Haner, supra,* as follows:

". . . the fact remains that City Council declined to appropriate the necessary funds for the continuation of the position of Manager of Personnel and Training. While the City Council undoubtedly relied to a certain extent on the City Manager's recommendations, the final decision rested exclusively with City Council. Appropriations are solely within the province of City Council. There is no requirement, Constitutional or otherwise, for the City Council to assign reasons for the allocation or nonallocation of funds. Moreover, the record reveals that numerous other classified positions were eliminated as a result of the reorganization implemented through the appropriations ordinance. It is true that the duty to notify the affected employees fell to the defendant. Whether the City Manager did or did not enjoy his task is irrelevant. Plaintiff's position was to be no longer existent. The defendant's letter apprising [plaintiff] of this circumstance does not create a cause of action against the City Manager." (footnote omitted) (at 1086–1087).

Just as in *Graham,* plaintiff in this action does not contend that the budget and appropriations ordinance was not duly enacted. The plaintiff does not contend that he had an employment contract with the City of Roanoke such as would prohibit termination of employment. There is no allegation that plaintiff had qualified for vested rights under the City's pension plan, which have been denied by the City Manager. In short, plaintiff has failed to advance any conceivable theory of action under which he might establish that he has suffered denial of procedural due process at the hands of the defendant City Manager.

Plaintiff in this action has assigned several factors which purportedly distinguish this case from *Graham v. Haner, supra.* In *Graham,* plaintiff intimated that the City Manager improperly represented to City Council the facts concerning the number of persons in the City's employ. In the current action, plaintiff has presented facts, figures, and various observations in support of this same allegation.[7] It is plaintiff's contention that as of at least May 31, 1976, there were less than 1655 occupied positions in the City of Roanoke work force. Thus, plaintiff would argue that defendant improperly represented a need for termination of occupied positions in order to comply with City Council's decision eventually embodied in the resolution of June 23, 1976. At the most, plaintiff's figures serve to create some factual discrepancy as to the number of occupied positions that were actually deleted pursuant to the general budgetary reduction implemented by the ordinance of June 23, 1976.[8] However, such

---

**7.** See Personnel Reports appearing as Exhibits A–I to Memorandum in Opposition to Defendant's Motion to Dismiss.

**8.** The court must note that plaintiff has apparently confused the import of the resolution of June 23, 1976 as opposed to that of the budget ordinance.passed the same day. The resolution merely directed the City Manager to limit the number of occupied, authorized positions to no more than 1655. Thus, the resolution served to limit the City Manager in the filling of vacant, authorized positions in the future. In order to effect the immediate budgetary reduction,

Council, by its budget ordinance, manifested its decision to eliminate certain other *occupied,* authorized positions. City Council could scarcely have addressed its immediate budgetary dilemma by merely eliminating, by ordinance, numerous vacant positions. This would have been true *regardless* of the number of authorized positions that were occupied as of the date of the ordinance. Furthermore, it is not necessary for this court to determine whether the budget dilemma was actual or imaginary. It is enough that the Roanoke City Council perceived the problem to be so real as to require immediate attention.

a discrepancy has absolutely no relevance to the legal issue at hand. The crucial factor is that City Council specifically made no appropriation for the position of Manager of Planning. The City Manager's input in Council's decision making process may have been great or it may have been small. However, the final decision rested solely with City Council. Viewed in a light most favorable to plaintiff, the personnel figures submitted by plaintiff may indicate that City Council failed to arm itself with all the relevant information. However, City Council's decision to make immediate budgetary reductions by personnel deletion cannot serve to create a cause of action against the City Manager.

■ Even assuming that plaintiff might in some way establish that defendant was to some degree responsible for plaintiff's termination, plaintiff's claim of due process infringement must still fail. In order to maintain an action under the Due Process Clause of the Fourteenth Amendment, a discharged public employee must indicate that he has been deprived of a legitimate "property" or "liberty" interest. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972). Such "property" interests often arise out of contractual arrangements. However, as noted above, plaintiff does not allege that he had an employment contract with the City of Roanoke such as would prohibit termination of employment. Moreover, there is no allegation that plaintiff had qualified for vested rights under the City's pension plan. In the alternative, plaintiff alleges that he was denied benefit of certain local procedural and personnel rules which would have served to protect his employment status. If such a situation did in fact prevail, plaintiff would have demonstrated a legitimate "property" inter-

est subject to constitutional protection. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). However, the record in this case clearly reveals that plaintiff has not been denied any access or protection as provided under the Roanoke City Grievance Procedure or Personnel Rules.

Plaintiff in this action again undertakes to distinguish his case from that of *Graham v. Haner, supra*, as regards application of certain Personnel Rules adopted by the City of Roanoke. In *Graham*, the plaintiff failed to take advantage of the existing grievance procedure. However, in the instant case, plaintiff filed an appeal of his termination with the Roanoke City Personnel Board on July 16, 1976.[9] The crux of his appeal concerned the application of the Roanoke City seniority system, as embodied in Personnel Rule 8.04. Mermelstein contended that the rule requires that in the case of "layoffs", junior employees must be laid off prior to senior employees. Mermelstein noted that he was senior in service to the individual serving as Assistant Manager of Planning and that such individual had assumed the duties previously assigned to the Manager of Planning. In his attempt to allege the existence of a requisite "property" interest, plaintiff now cites the Personnel Board's purported failure to apply the local rule concerning seniority. However, the record reveals that the Personnel Board gave full consideration to plaintiff's appeal.

Upon initial consideration of the appeal, the Personnel Board expressed the opinion that the controversy did not present a grievable matter.[10] However, the Personnel Board sought consultation from the City Attorney. The City Attorney's Office opined that since the job termination occurred as a result of a policy decision by City Council, the controversy could not present a grievable matter. *Nevertheless,*

---

**9.** See Mermelstein's notation of appeal, appearing as an attachment to Exhibit F to Memorandum in Support of Defendant's Motion to Dismiss.

**10.** See notation from Personnel Board to City Attorney appearing as Exhibit F to Memorandum in Support of Defendant's Motion to Dismiss.

the City Attorney's Office recommended that a hearing be granted, inasmuch as City Council had manifested the intent for *any* employee separation to be subject to review by the Personnel Board.[11] The communication from the City Attorney's Office also discussed the meaning of the term "seniority" as employed in Personnel Rule 8.04. Assistant City Attorney James E. Buchholtz opined that the Roanoke City seniority system envisioned "job classification" seniority as opposed to "departmental" seniority or "plant wide" seniority.[12]

A hearing on plaintiff's appeal was conducted by the Personnel Board on August 19, 1976. As evidenced by a letter to City Council, the Personnel Board still entertained some doubts as to the effect of the interplay of the seniority system in Mermelstein's termination.[13] The Personnel Board specifically requested City Council to set more specific guidelines for administration of the seniority system. The City Council responded on September 3, 1976 by letter of the City Clerk to the City Attorney with copy to the Chairman of the Personnel Board.[14] In the letter, it was noted that the Council had determined that the earlier opinion of the Assistant City Attorney presented a clear analysis of the situation. Finally, by letter dated September 3, 1976, the Personnel Board rendered its dispositive determination.[15] The Board concluded that

plaintiff's position was terminated by the budget ordinance passed on June 23, 1976. The Board further concluded that since Mermelstein was the only person in the job classification of Manager of Planning, the seniority rule could not apply to his case. Plaintiff apparently did not choose to appeal the Personnel Board's determination to the City Manager, as provided under the Roanoke City grievance mechanism.

▉ Obviously, plaintiff received full benefit of the local procedural rules. By adopting the Assistant City Attorney's analysis of the Roanoke seniority system as one of job classification, the Personnel Board rejected the notion that the Assistant Manager of Planning should have been "laid off" first. In essence, plaintiff would now have this court deny summary judgment and cause a factual determination to be made as to the propriety of the Personnel Board's decision. Clearly, it is not the function of this court to reweigh the merits of a controversy previously resolved by a duly authorized local governmental organ. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). If this case presented any indication that the City Manager had acted so as to deny plaintiff full access to the rights and privileges secured under the local grievance procedure, the motion for summary judgment would be denied.[16]

11. See letter of Assistant City Attorney Janes E. Buchholtz to Fred Weaver, Manager of Personnel, appearing as Exhibit G to Memorandum in Support of Defendant's Motion to Dismiss.

12. Under Assistant City Attorney Buchholtz's analysis, plant wide seniority is a system whereby the "last in—first out" rule would apply to all employees, regardless of their job function. Departmental seniority would apply to all employees in a specific department, regardless of their job title. Job classification seniority would apply only to employees who hold the same job title. In concluding that the job classification system is best suited to the needs of the City of Roanoke, Attorney Buchholtz opined that the work function structure in large city governments is generally characterized by highly specialized and distinct work roles.

13. See letter of Bernice Cheatham, Chairman of Personnel Board, to City Council, appearing as

Exhibit H to Memorandum in Support of Defendant's Motion to Dismiss.

14. See letter of September 3, 1976, appearing as Exhibit I to Memorandum in Support of Defendant's Motion to Dismiss.

15. See letter of Bernice Cheatham, Chairman of Personnel Board, to Lothar Mermelstein, appearing as Exhibit J to Memorandum in Support of Defendant's Motion to Dismiss.

16. In this context, it is relevant to note that defendant has apparently misread portions of this court's opinion in *Graham v. Haner, supra.* Defendant cites *Graham* for the proposition that Roanoke City employees have no constitutionally protected "property" interest in their jobs. Defendant observes that the City Manager still retains final authority to hire and fire employees, regardless of the recommendation of the Personnel Board. Defendant's contention was correct at the time of this court's

However, the record clearly reveals that plaintiff took full advantage of all his procedural safeguards. In such a situation, the court must determine that no loss of "property" interest has occurred through a denial of procedural due process. *Prince v. Bridges*, 537 F.2d 1269 (4th Cir., 1976).

### CONCLUSION AND DISPOSITION

The record in this case establishes that plaintiff's employment position with the City of Roanoke was effectively terminated by ordinance of Roanoke City Council. The defendant's role in the passage of the budget ordinance of June 23, 1976 was purely advisory, as provided by the Roanoke City Charter. The court finds plaintiff's allegations of illegal conduct by the defendant in the termination of plaintiff's job to be without merit as a matter of law. Moreover, plaintiff has failed to allege sufficient grounds for a possible finding of a requisite "property" interest subject to protection under the Due Process Clause of the Fourteenth Amendment. In short, plaintiff has failed to allege circumstances suggestive of a denial of procedural due process arising out of conduct of the defendant or otherwise. Accordingly, it is ORDERED that summary judgment be entered in favor of the defendant with each party to bear his own costs.

decision in *Brown v. Hirst*, 322 F.Supp. 236 (W.D.Va., 1971) aff'd 443 F.2d 899 (4th Cir., 1971) cert. denied 404 U.S. 1040, 92 S.Ct. 720, 30 L.Ed.2d 732 (1972). However, at the time of *Brown*, employees had no statutorily protected right to a Personnel Board hearing as a step in the grievance procedure. As noted in *Graham*, Section 15.1–7.1 of the Virginia Code, enacted in 1973, now requires that terminated employ-ees be given an opportunity to address the circumstances of their removal in a "full and impartial inquiry". This court noted in *Graham* that denial of these statutorily protected procedural rights can give rise to a requisite "property" interest, despite the fact that the final decision still rests in the hands of the City Manager. See also *Prince v. Bridges*, 537 F.2d 1269, 1272 (4th Cir., 1976).