BISHOP *v.* WOOD ET AL.

No. 74–1303.   Argued March 1, 1976—Decided June 10, 1976

See 498 F. 2d 1341.

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 350. WHITE, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 355. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 361.

*Norman B. Smith* argued the cause and filed briefs for petitioner.

*Charles E. Burgin* argued the cause and filed a brief for respondents.*

MR. JUSTICE STEVENS delivered the opinion of the Court.

Acting on the recommendation of the Chief of Police, the City Manager of Marion, N. C., terminated petitioner's employment as a policeman without affording him a hearing to determine the sufficiency of the cause for his discharge. Petitioner brought suit contending

---

*\*Stephen J. Pollak* and *Richard M. Sharp* filed a brief for the Coalition of American Public Employees as *amicus curiae* urging reversal.

that since a city ordinance classified him as a "permanent employee," he had a constitutional right to a pretermination hearing.[1] During pretrial discovery petitioner was advised that his dismissal was based on a failure to follow certain orders, poor attendance at police training classes, causing low morale, and conduct unsuited to an officer. Petitioner and several other police officers filed affidavits essentially denying the truth of these charges. The District Court granted defendants' motion for summary judgment.[2] The Court of Appeals affirmed,[3] and we granted certiorari, 423 U. S. 890.

The questions for us to decide are (1) whether petitioner's employment status was a property interest protected by the Due Process Clause of the Fourteenth Amendment,[4] and (2) assuming that the explanation for his discharge was false, whether that false explanation deprived him of an interest in liberty protected by that Clause.

## I

Petitioner was employed by the city of Marion as a probationary policeman on June 9, 1969. After six months he became a permanent employee. He was dismissed on March 31, 1972. He claims that he had either an express or an implied right to continued employment.

---

[1] He relied on 42 U. S. C. § 1983, invoking federal jurisdiction under 28 U. S. C. § 1343 (3). He sought reinstatement and backpay. The defendants were the then City Manager, Chief of Police, and the city of Marion. Since the city is not a "person" within the meaning of the statute, it was not a proper defendant. *Monroe* v. *Pape*, 365 U. S. 167, 187–192.

[2] 377 F. Supp. 501 (WDNC 1973).

[3] A three-judge panel of the Court of Appeals affirmed, with one judge dissenting, 498 F. 2d 1341 (CA4 1974); then, after granting a rehearing en banc, the court affirmed without opinion by an equally divided court.

[4] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U. S. Const., Amdt. 14.

A city ordinance provides that a permanent employee may be discharged if he fails to perform work up to the standard of his classification, or if he is negligent, inefficient, or unfit to perform his duties.[5] Petitioner first contends that even though the ordinance does not expressly so provide, it should be read to prohibit discharge for any other reason, and therefore to confer tenure on all permanent employees. In addition, he contends that his period of service, together with his "permanent" classification, gave him a sufficient expectancy of continued employment to constitute a protected property interest.

A property interest in employment can, of course, be created by ordinance, or by an implied contract.[6] In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.[7]

---

[5] Article II, § 6, of the Personnel Ordinance of the city of Marion, reads as follows:

"*Dismissal.* A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager. Any discharged employee shall be given written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice."

[6] In *Perry* v. *Sindermann,* 408 U. S. 593, 601, the Court said that a "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."

[7] "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents* v. *Roth,* 408 U. S. 564, 577.

The North Carolina Supreme Court has held that an enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee. *Still* v. *Lance*, 279 N. C. 254, 182 S. E. 2d 403 (1971). Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question.

On its face the ordinance on which petitioner relies may fairly be read as conferring such a guarantee. However, such a reading is not the only possible interpretation; the ordinance may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures.[8] We do not have any authoritative interpretation of this ordinance by a North Carolina state court. We do, however, have the opinion of the United States District Judge who, of course, sits in North Carolina and practiced law there for many years. Based on his understanding of state law, he concluded that petitioner "held his position at the will and pleasure of the city." [9] This construction of North

---

[8] This is not the construction which six Members of this Court placed on the federal regulations involved in *Arnett* v. *Kennedy*, 416 U. S. 134. In that case the Court concluded that because the employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection. In this case, a holding that as a matter of state law the employee "held his position at the will and pleasure of the city" necessarily establishes that he had *no* property interest. The Court's evaluation of the federal regulations involved in *Arnett* sheds no light on the problem presented by this case.

[9] "Under the law in North Carolina, nothing else appearing, a contract of employment which contains no provision for the duration or termination of employment is terminable at the will of either party irrespective of the quality of performance by the other party. By statute, G. S. § 115–142 (b), a county board of education in North Carolina may terminate the employment of a teacher at

Carolina law was upheld by the Court of Appeals for the Fourth Circuit, albeit by an equally divided court. In comparable circumstances, this Court has accepted the interpretation of state law in which the District Court and the Court of Appeals have concurred even if an examination of the state-law issue without such guidance might have justified a different conclusion.[10]

the end of the school year without filing charges or giving its reasons for such termination, or granting the teacher an opportunity to be heard. *Still* v. *Lance,* 279 N. C. 254, 182 S. E. 2d 403 (1971).

"It is clear from Article II, Section 6, of the City's Personnel Ordinance, that the dismissal of an employee does not require a notice or a hearing. Upon request of the discharged employee, he shall be given written notice of his discharge setting forth the effective date and the reasons for the discharge. It thus appears that both the city ordinance and the state law have been complied with.

"It further appears that the plaintiff held his position at the will and pleasure of the city." 377 F. Supp., at 504.

[10] See *United States* v. *Durham Lumber Co.,* 363 U. S. 522. In *Propper* v. *Clark,* 337 U. S. 472, 486–487, the Court stated: "The precise issue of state law involved, *i. e.,* whether the temporary receiver under § 977–b of the New York Civil Practice Act is vested with title by virtue of his appointment, is one which has not been decided by the New York courts. Both the District Court and the Court of Appeals faced this question and answered it in the negative. In dealing with issues of state law that enter into judgments of federal courts, we are hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable." In *Township of Hillsborough* v. *Cromwell,* 326 U. S. 620, 629–630, the Court stated: "Petitioner makes an extended argument to the effect that *Duke Power Co.* [v. *State Board,* 129 N. J. L. 449, 30 A. 2d 416, 131 N. J. L. 275, 36 A. 2d 201,] is not a controlling precedent on the local law question on which the decision below turned. On such questions we pay great deference to the views of the judges of those courts 'who are familiar with the intricacies and trends of local law and practice.' *Huddleston* v. *Dwyer,* 322 U. S. 232, 237. We are unable to say that the District Court and the Circuit Court of Appeals erred in applying to this case the rule of *Duke Power Co.* v. *State Board,* which involved closely analogous facts." And in *MacGregor* v. *State Mut. Life Assur. Co.,*

In this case, as the District Court construed the ordinance, the City Manager's determination of the adequacy of the grounds for discharge is not subject to judicial review; the employee is merely given certain procedural rights which the District Court found not to have been violated in this case. The District Court's reading of the ordinance is tenable; it derives some support from a decision of the North Carolina Supreme Court, *Still* v. *Lance, supra;* and it was accepted by the Court of Appeals for the Fourth Circuit. These reasons are sufficient to foreclose our independent examination of the state-law issue.

Under that view of the law, petitioner's discharge did not deprive him of a property interest protected by the Fourteenth Amendment.

## II

Petitioner's claim that he has been deprived of liberty has two components. He contends that the reasons given for his discharge are so serious as to constitute a stigma that may severely damage his reputation in the community; in addition, he claims that those reasons were false.

In our appraisal of petitioner's claim we must accept his version of the facts since the District Court granted summary judgment against him.[11] His evidence estab-

---

315 U. S. 280, 281, the Court stated: "No decision of the Supreme Court of Michigan, or of any other court of that State, construing the relevant Michigan law has been brought to our attention. In the absence of such guidance, we shall leave undisturbed the interpretation placed upon purely local law by a Michigan federal judge of long experience and by three circuit judges whose circuit includes Michigan."

[11] In granting summary judgment for respondents, the District Court was required to resolve all genuine disputes as to material facts in favor of petitioner. Fed. Rule Civ. Proc. 56 (c); *Arnett* v. *Kennedy, supra,* at 139–140.

lished that he was a competent police officer; that he was respected by his peers; that he made more arrests than any other officer on the force; that although he had been criticized for engaging in high-speed pursuits, he had promptly heeded such criticism; and that he had a reasonable explanation for his imperfect attendance at police training sessions. We must therefore assume that his discharge was a mistake and based on incorrect information.

In *Board of Regents* v. *Roth,* 408 U. S. 564, we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Id.,* at 575. This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.

In this case the asserted reasons for the City Manager's decision were communicated orally to the petitioner in private and also were stated in writing in answer to interrogatories after this litigation commenced. Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his "good name, reputation, honor, or integrity" [12] was thereby impaired. And since the latter communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim. A con-

---

[12] See *Wisconsin* v. *Constantineau,* 400 U. S. 433, 437, and the discussion of the interest in reputation allied to employment in *Paul* v. *Davis,* 424 U. S. 693.

trary evaluation of either explanation would penalize forthright and truthful communication between employer and employee in the former instance, and between litigants in the latter.

Petitioner argues, however, that the reasons given for his discharge were false. Even so, the reasons stated to him in private had no different impact on his reputation than if they had been true. And the answers to his interrogatories, whether true or false, did not cause the discharge. The truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired.[13] A contrary evaluation of his contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake.

The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.[14] We must accept the

---

[13] Indeed, the impact on petitioner's constitutionally protected interest in liberty is no greater even if we assume that the City Manager deliberately lied. Such fact might conceivably provide the basis for a state-law claim, the validity of which would be entirely unaffected by our analysis of the federal constitutional question.

[14] The cumulative impression created by the three dissenting opinions is that this holding represents a significant retreat from settled practice in the federal courts. The fact of the matter, however, is that the instances in which the federal judiciary has required a state agency to reinstate a discharged employee for failure to provide a pretermination hearing are extremely rare. The reason is clear. For unless we were to adopt MR. JUSTICE BRENNAN's remarkably innovative suggestion that we develop a federal common law of property rights, or his equally far-reaching view that almost every discharge implicates a constitutionally protected liberty interest, the

harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

The judgment is affirmed.

*So ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL concurs, dissenting.

Petitioner was discharged as a policeman on the grounds of insubordination, "causing low morale," and "conduct unsuited to an officer." *Ante,* at 343. It is difficult to imagine a greater "badge of infamy" that could be imposed on one following petitioner's calling; in a profession in which prospective employees are invariably investigated, petitioner's job prospects will be severely constricted by the governmental action in this case. Although our case law would appear to require that petitioner thus be accorded an opportunity "to clear his name" of this calumny, see, *e. g., Board of Regents* v. *Roth,* 408 U. S. 564, 573, and n. 12 (1972); *Arnett* v. *Kennedy,* 416 U. S. 134, 157 (1974) (opinion

ultimate control of state personnel relationships is, and will remain, with the States; they may grant or withhold tenure at their unfettered discretion. In this case, whether we accept or reject the construction of the ordinance adopted by the two lower courts, the power to change or clarify that ordinance will remain in the hands of the City Council of the city of Marion.

of REHNQUIST, J.), the Court condones this governmental action and holds that petitioner was deprived of no liberty interest thereby.

*Paul v. Davis,* 424 U. S. 693 (1976), a decision overtly hostile to the basic constitutional safeguards of the Due Process Clauses of the Fifth and Fourteenth Amendments that I had hoped would be a "short-lived aberration," *id.,* at 735 (BRENNAN, J., dissenting), held that the "interest in reputation asserted in [*Paul*] is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.,* at 712. Accordingly, it found inapplicable the rule that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U. S. 433, 437 (1971), and cases cited therein. In so holding, the Court eviscerated the substance of a long line of prior cases, see, *e. g., Anti-Fascist Comm. v. McGrath,* 341 U. S. 123 (1951); *Cafeteria Workers v. McElroy,* 367 U. S. 886 (1961); *Board of Regents v. Roth, supra,* by confining their protection of "liberty" to situations in which the State inflicts damage to a government employee's "good name, reputation, honor, or integrity" in the process of terminating his employment. See *Paul v. Davis, supra,* at 708. Compare *id.,* at 709, 710, with *id.,* at 732–733 (BRENNAN, J., dissenting).[1] Today the Court effectively destroys even that last vestige of protection for "liberty" by holding that a State may tell an employee that he is being fired for some nonderogatory reason, and then turn around and inform prospective employers that the em-

---

[1] The Court in *Paul* also ignored the clear import of *Goss v. Lopez,* 419 U. S. 565 (1975); *Wisconsin v. Constantineau,* 400 U. S. 433 (1971); and *Jenkins v. McKeithen,* 395 U. S. 411 (1969). See *Paul v. Davis,* 424 U. S., at 729–733 (BRENNAN, J., dissenting).

ployee was in fact discharged for a stigmatizing reason that will effectively preclude future employment.

The Court purports to limit its holding to situations in which there is "no public disclosure of the reasons for the discharge," *ante,* at 348, but in this case the stigmatizing reasons have been disclosed, and there is no reason to believe that respondents will not convey these actual reasons to petitioner's prospective employers.[2] The Court responds by asserting that since the stigma was imposed "after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim." *Ibid.* But the "claim" does not arise until the State has officially branded petitioner in some way, and the purpose of the due process hearing is to accord him an opportunity to clear his name; merely because the derogatory information is filed in respondents' records and no "publication" occurs until shortly after his discharge from employment does not subvert the fact that a postdeprivation hearing to accord petitioner an opportunity to clear his name has been contemplated by our cases.[3]

---

[2] It is only common sense, to be sure, that prospective employers will inquire as to petitioner's employment during the 33 months in which he was in respondents' service.

[3] The Court asserts that to provide petitioner with a postdeprivation hearing when the stigmatizing reasons become known during litigation "would penalize forthright and truthful communication . . . between litigants." *Ante,* at 349. Of course, there are various sanctions under our judicial system to ensure that testimony is "forthright and truthful" without necessitating denial of petitioner's due process rights. And I suppose the Court would declare that according a discharged employee a postdeprivation hearing as soon as it is clear his former employer is stigmatizing his name when it communicates with prospective employers would similarly discourage "forthright and truthful" communication between employers in that situation. However, the purpose of the due process hearing is to provide petitioner a mechanism for clearing his name of a cloud that is not in fact "truthful."

Even under *Paul* v. *Davis,* respondents should be required to accord petitioner a due process hearing in which he can attempt to vindicate his name; this further expansion of those personal interests that the Court simply writes out of the "life, liberty, or property" Clauses of the Fifth and Fourteenth Amendments is simply another curtailment of precious constitutional safeguards that marks too many recent decisions of the Court.

I also fully concur in the dissenting opinions of MR. JUSTICE WHITE and MR. JUSTICE BLACKMUN, which forcefully demonstrate the Court's error in holding that petitioner was not deprived of "property" without due process of law. I would only add that the strained reading of the local ordinance, which the Court deems to be "tenable," *ante,* at 347, cannot be dispositive of the existence *vel non* of petitioner's "property" interest. There is certainly a federal dimension to the definition of "property" in the Federal Constitution; cases such as *Board of Regents* v. *Roth, supra,* held merely that "property" interests encompass those to which a person has "a legitimate claim of entitlement," 408 U. S., at 577, and *can* arise from "existing rules or understandings" that derive from "an independent source *such* as state law." *Ibid.* (emphasis supplied). But certainly, at least before a state law is definitively construed as not securing a "property" interest, the relevant inquiry is whether it was objectively reasonable for the employee to believe he could rely on continued employment. Cf. *ibid.* ("It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." [4]) At a minimum, this would require in this

---

[4] By holding that States have "unfettered discretion" in defining "property" for purposes of the Due Process Clause of the Federal Constitution, see *ante,* at 349–350, n. 14, the Court is, as my Brother WHITE argues, effectively adopting the analysis rejected by a major-

case an analysis of the common practices utilized and
the expectations generated by respondents, and the man-
ner in which the local ordinance would reasonably be
read by respondents' employees.[5]  These disputed issues
of fact are not meet for resolution, as they were on
summary judgment, and would thus at a minimum re-
quire a remand for further factual development in the
District Court.

These observations do not, of course, suggest that a
"federal court is . . . the appropriate forum in which to
review the multitude of personnel decisions that are
made daily by public agencies." *Ante,* at 349.  However,
the federal courts *are* the appropriate forum for ensuring
that the constitutional mandates of due process are fol-
lowed by those agencies of government making person-
nel decisions that pervasively influence the lives of
those affected thereby; the fundamental premise of the
Due Process Clause is that those procedural safeguards
will help the government avoid the "harsh fact" of "in-
correct or ill-advised personnel decisions." *Ante,* at 350.

---

ity of the Court in *Arnett* v. *Kennedy,* 416 U. S. 134 (1974).  More
basically, the Court's approach is a resurrection of the discredited
rights/privileges distinction, for a State may now avoid all due
process safeguards attendant upon the loss of even the necessities
of life, cf. *Goldberg* v. *Kelly,* 397 U. S. 254 (1970), merely by label-
ing them as not constituting "property."  See also, *e. g., Bell* v.
*Burson,* 402 U. S. 535 (1971); *Fuentes* v. *Shevin,* 407 U. S. 67
(1972); *Morrissey* v. *Brewer,* 408 U. S. 471 (1972).

[5] For example, petitioner was hired for a "probationary" period
of six months, after which he became a "permanent" employee.  No
reason appears on the record for this distinction, other than the
logical assumption, confirmed by a reasonable reading of the local
ordinance, that after completion of the former period, an employee
may only be discharged for "cause."  As to respondents' personnel
practices, it is important to note that in a department which cur-
rently employs 17 persons, petitioner's was the only discharge, for
cause or otherwise, during the period of over three years from the
time of his hiring until the time of pretrial discovery.

Petitioner seeks no more than that, and I believe that his "property" interest in continued employment and his "liberty" interest in his good name and reputation dictate that he be accorded procedural safeguards before those interests are deprived by arbitrary or capricious government action.

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN, MR. JUSTICE MARSHALL, and MR. JUSTICE BLACKMUN join, dissenting.

I dissent because the decision of the majority rests upon a proposition which was squarely addressed and in my view correctly rejected by six Members of this Court in *Arnett* v. *Kennedy*, 416 U. S. 134 (1974).

Petitioner Bishop was a permanent employee of the Police Department of the city of Marion, N. C. The city ordinance applicable to him provides:

> "*Dismissal.* A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. *If* a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager. Any discharged employee shall be given written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice." (Emphasis added.)

The second sentence of this ordinance plainly conditions petitioner's dismissal on cause—*i. e.*, failure to perform up to standard, negligence, inefficiency, or unfitness to perform the job. The District Court below did not otherwise construe this portion of the ordinance. In the only part of its opinion rejecting petitioner's claim that the ordinance gave him a property interest in his job,

the District Court said, in an opinion predating this Court's decision in *Arnett* v. *Kennedy, supra:*

> "It is clear from Article II, Section 6, of the City's Personnel Ordinance, that the dismissal of an employee does not require a notice or a hearing. Upon request of the discharged employee, he shall be given written notice of his discharge setting forth the effective date and the reasons for the discharge. It thus appears that both the city ordinance and the state law have been complied with." 377 F. Supp. 501, 504 (WDNC 1973).

Thus in concluding that petitioner had no "property interest" in his job entitling him to a hearing on discharge and that he held his position "at the will and pleasure of the city," *ibid.,* the District Court relied on the fact that the ordinance described its own *procedures* for determining cause, which procedures did not include a hearing. The majority purports, *ante,* at 345, and n. 8, to read the District Court's opinion as construing the ordinance *not* to condition dismissal on cause, and, if this is what the majority means, its reading of the District Court's opinion is clearly erroneous for the reasons just stated.[1] However, later in its opinion the majority ap-

---

[1] The Court accepts the District Court's conclusion that the city employee holds his position at the will and pleasure of the city. If the Court believes that the District Court's conclusion did not rest on the procedural limitations in the ordinance, then the Court must construe the District Court's opinion—and the ordinance—as permitting, but not limiting, discharges to those based on the causes specified in the ordinance. In this view, discharges for other reasons or for no reason at all could be made. Termination of employment would in effect be within the complete discretion of the city; and for this reason the employee would have no property interest in his employment which would call for the protections of the Due Process Clause. As indicated in the text, I think this construction of the ordinance and of the District Court's opinion is in error.

pears to eschew this construction of the District Court's opinion and of the ordinance. In the concluding paragraph of its discussion of petitioner's property interest, the majority holds that since neither the ordinance nor state law provides for a hearing, or any kind of review of the City Manager's dismissal decision, petitioner had no enforceable property interest in his job. The majority concludes:

> "In this case, as the District Court construed the ordinance, the City Manager's *determination of the adequacy of the grounds for discharge* is not subject to judicial review; the employee is merely given certain procedural rights which the District Court found not to have been violated in this case. The District Court's reading of the ordinance is tenable . . . ." *Ante,* at 347. (Emphasis added.)

The majority thus implicitly concedes that the ordinance supplies the "grounds" for discharge and that the City Manager must determine them to be "adequate" before he may fire an employee. The majority's holding that petitioner had no property interest in his job in spite of the unequivocal language in the city ordinance that he may be dismissed only for certain kinds of cause rests, then, on the fact that state law provides no *procedures* for assuring that the City Manager dismiss him only for cause. The right to his job apparently given by the first two sentences of the ordinance is thus redefined, according to the majority, by the procedures provided for in the third sentence and as redefined is infringed only if the procedures are not followed.

This is precisely the reasoning which was embraced by only three and expressly rejected by six Members of this Court in *Arnett* v. *Kennedy, supra.* There a federal employee had "a statutory expectancy that he not be removed other than for 'such cause as will promote

the efficiency of [the] service.'" 416 U. S., at 151–152 (opinion of REHNQUIST, J., joined by BURGER, C. J., and STEWART, J.). The three Justices whose views were rejected by a majority of the Court went on to say:

> "But the very section of the statute which granted him that right . . . expressly provided also for the procedure by which 'cause' was to be determined, and expressly omitted the procedural guarantees which appellee insists are mandated by the Constitution. Only by bifurcating the very sentence of the Act of Congress which conferred upon appellee the right not to be removed save for cause could it be said that he had an expectancy of that substantive right without the procedural limitations which Congress attached to it. . . ." *Id.,* at 152.

The three Justices went on:

> "Here the property interest which appellee had in his employment was itself conditioned by the procedural limitations which had accompanied the grant of that interest. . . ." *Id.,* at 155.

Accordingly they concluded that the Constitution imposed no independent procedural requirements.

This view was rejected by MR. JUSTICE POWELL in an opinion joined by MR. JUSTICE BLACKMUN.

> "The plurality opinion evidently reasons that the nature of appellee's interest in continued federal employment is necessarily defined and limited by the statutory procedures for discharge and that the constitutional guarantee of procedural due process accords to appellee no procedural protections against arbitrary or erroneous discharge other than those expressly provided in the statute. The plurality would thus conclude that the statute governing federal employment determines not only the nature of appellee's property interest, but also the extent of

the procedural protections to which he may lay claim. It seems to me that this approach is incompatible with the principles laid down in *Roth* and *Sindermann.* Indeed, it would lead directly to the conclusion that whatever the nature of an individual's statutorily created property interest, deprivation of that interest could be accomplished without notice or a hearing at any time. This view misconceives the origin of the right to procedural due process. That right is conferred, *not by legislative grace, but by constitutional guarantee.* While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. . . ." *Id.,* at 166–167. (Emphasis added.)

I, too, disagreed with the view stated in MR. JUSTICE REHNQUIST's opinion:

"I differ basically with the plurality's view that 'where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet,' and that 'the property interest which appellee had in his employment was itself conditioned by the procedural limitations which had accompanied the grant of that interest.' *Ante,* at 153–154, 155. The rationale of this position quickly leads to the conclusion that even though the statute requires cause for discharge, the requisites of due process could equally have been satisfied had the law dispensed with any hearing at all, whether pretermination or post-termination." *Id.,* at 177–178.

The view was also rejected by MR. JUSTICE MARSHALL in an opinion joined by MR. JUSTICE BRENNAN and Mr. Justice Douglas in which it was correctly observed:

"Accordingly, a majority of the Court rejects MR. JUSTICE REHNQUIST's argument that because appellee's entitlement arose from statute, it could be conditioned on a statutory limitation of procedural due process protections, an approach which would render such protection inapplicable to the deprivation of any statutory benefit—any 'privilege' extended by Government—where a statute prescribed a termination procedure, no matter how arbitrary or unfair. It would amount to nothing less than a return, albeit in somewhat different verbal garb, to the thoroughly discredited distinction between rights and privileges which once seemed to govern the applicability of procedural due process." *Id.*, at 211.

The views now expressed by the majority are thus squarely contrary to the views expressed by a majority of the Justices in *Arnett.* As MR. JUSTICE POWELL suggested in *Arnett,* they are also "incompatible with the principles laid down in *Roth* and *Sindermann*." [2] *Id.*, at 166. I would not so soon depart from these cases nor from the views expressed by a majority in *Arnett.* The ordinance plainly grants petitioner a right to his job unless there is cause to fire him. Having granted him such a right it is the Federal Constitution,[3]

---

[2] *Board of Regents* v. *Roth,* 408 U. S. 564 (1972), and *Perry* v. *Sindermann,* 408 U. S. 593 (1972).

[3] The majority intimates, *ante,* at 345 n. 8, that the views of the three plurality Justices in *Arnett* v. *Kennedy* were rejected because the other six Justices disagreed on the question of how the federal *statute* involved in that case should be construed. This is incorrect. All Justices agreed on the meaning of the statute. As the remarks of the six Justices quoted above indicate, it was the constitutional

not state law, which determines the process to be applied in connection with any state decision to deprive him of it.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN joins, dissenting.

I join MR. JUSTICE WHITE's dissent for I agree that the Court appears to be adopting a legal principle which specifically was rejected by a majority of the Justices of this Court in *Arnett* v. *Kennedy,* 416 U. S. 134 (1974).

I also feel, however, that *Still* v. *Lance,* 279 N. C. 254, 182 S. E. 2d 403 (1971), the only North Carolina case cited by the Court and by the District Court, is by no means the authoritative holding on state law that the Court, *ante,* at 345, and n. 9, seems to think it is. In *Still* the Supreme Court of North Carolina considered a statute that contained no "for cause" standard for failure to renew a teacher's contract at the *end* of a school year. In holding that this provision did not create a continued expectation of employment, the North Carolina court noted that it "does not limit the right of the employer board to terminate the employment of a teacher at the

significance of the statute on which the six disagreed with the plurality.

Similarly, here, I do not disagree with the majority or the courts below on the meaning of the state law. If I did, I might be inclined to defer to the judgments of the two lower courts. The state law says that petitioner may be dismissed by the City Manager only for certain kinds of cause and then provides that he will receive notice and an explanation, but no hearing and no review. I agree that as a matter of state law petitioner has no remedy no matter how arbitrarily or erroneously the City Manager has acted. This is what the lower courts say the statute means. I differ with those courts and the majority only with respect to the constitutional significance of an unambiguous state law. A majority of the Justices in *Arnett* v. *Kennedy,* stood on the proposition that the Constitution requires procedures *not* required by state law when the state conditions dismissal on "cause."

end of a school year to a specified cause or circumstance." 279 N. C., at 260, 182 S. E. 2d, at 407. This provision, the court observed, stood in sharp contrast with another provision of the statute relating to termination of employment *during* the school year and prescribing that when "it shall have been determined that the services of an employee are not *acceptable* for the remainder of the current school year" (emphasis added), *ibid.*, notice and hearing were required.

The Marion ordinance in the present case contains a "for cause" standard for dismissal and, it seems to me, is like that portion of the statute construed in *Still* pertaining to termination of employment during the year. As such, it plainly does not subject an employee to termination at the will and pleasure of the municipality, but, instead, creates a proper expectation of continued employment so long as he performs his work satisfactorily. At this point, the Federal Constitution steps in and requires that appropriate procedures be followed before the employee may be deprived of his property interest.