In the Matter of EDWARD M. PETIX, Respondent, v WILLIAM G. CONNELIE, as Superintendent of the Division of the New York State Police, et al., Appellants. (Proceeding No. 1.)

In the Matter of JAMES N. WILKINSON, Respondent, v WILLIAM G. CONNELIE, as Superintendent of the Division of the New York State Police, et al., Appellants. (Proceeding No. 2.)

In the Matter of RICHARD H. HAMPSON, Respondent, v WILLIAM G. CONNELIE, as Superintendent of the Division of the New York State Police, et al., Appellants. (Proceeding No. 3.)

Third Department, January 26, 1978

66

APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Michael F. Colligan* and *Ruth Kessler Toch* of counsel), for appellants.

*Hinman, Straub, Pigors & Manning (Bernard J. Malone, Jr.,* of counsel), for Edward M. Petix and another, respondents.

*John P. Lomenzo, Jr.,* for Richard H. Hampson, respondent.

### OPINION OF THE COURT

GREENBLOTT, J. P.

On January 31, 1975 petitioners were removed as investigators in the Bureau of Criminal Investigation (BCI), positions

they had each held in good standing well beyond the probationary period, and were reassigned as troopers in the uniform service. Pursuant to a collective bargaining agreement (the agreement) between the Police Benevolent Association of the State Police and the State, petitioners demanded a written statement of reasons for the reassignments. Each was advised of various violations of department regulations and charges of improper conduct. The three petitioners each commenced grievance proceedings as provided for in the agreement. The grievances were denied through all four steps. These article 78 proceedings were brought to review the propriety of the reassignments and to obtain proper hearings on the charges.

Petitioners allege that they were denied their right to hearings conducted in accordance with the State Police Manual (set forth at 9 NYCRR Part 479). They also contend that they were stigmatized by their demotions and, thus, are entitled to hearings to clear their names, as a constitutional right. Special Term found that petitioners had been defamed and directed hearings to review petitioners' reassignments.

■ The starting point in matters of this type is *Board of Regents v Roth* (408 US 564), in which a nontenured professor sought review of his dismissal. *Roth* explained that a person is entitled to procedural due process only when deprived of the interests encompassed by the Fourteenth Amendment's protection of liberty and property. The court defined liberty broadly, not merely as freedom from bodily restraint, but also as the right to contract, marry, work, worship and generally enjoy privileges essential to the pursuit of happiness by free men (citing *Meyer v Nebraska,* 262 US 390). The court found no limitation on petitioner's liberty but did suggest situations in which impingement on one's liberty would flow from termination: when the employer levels charges that would damage the employee's standing in his community or when refusal to re-employ creates a stigma or disability that forecloses the employee's freedom to take advantage of other employment opportunities.

The *Roth* court's notion of protected property encompassed those specific benefits to which the employee had an established interest. Thus, employees under promise of continued employment were entitled to a hearing prior to dismissal. The employee's entitlement to benefit must stem from a "legitimate claim" to it. Property interests are created and defined by local laws, regulations and understandings.

Relevant to definition of the property interests in the case before us are sections 215 and 216 of the Executive Law, article 11 of the New York State Police Manual, regulations of the New York State Police (9 NYCRR Subtit K) and the collective bargaining agreement. Subdivision 3 of section 215 of the Executive Law gives the superintendent the power to appoint members of the New York State Police and to remove them only after a hearing. It also empowers him to make rules and regulations to discipline and control the members. Section 216 allows the superintendent to establish a bureau of investigation and appoint members of the State Police to the bureau.

The regulations of the Superintendent provide for appointments to investigative positions with the BCI (9 NYCRR 476.1). They provide a 52-week probationary period and protect appointees from termination without a hearing in certain cases. The regulations provide an elaborate procedural mechanism for discipline of members (9 NYCRR Part 479). These provisions are also made part of the State Police Manual. Article 11 of the manual contains regulations governing appointments to noncompetitive member positions, which include investigators in the BCI. Article 11.11 states that a member of the State Police serving in the BCI, who previously served in the uniform force of the State Police, is eligible for reassignment to the uniform force. Article 11.13 provides that appointments to noncompetitive positions shall be during the pleasure of the superintendent. Article 21 of the collective bargaining agreement provides that a member who is reassigned from the BCI to the uniform force in his permanent rank may request the reasons for his reassignment. The reasons must be given in writing. The member is then entitled to process a grievance in accordance with the agreement.

We conclude that these various provisions entitle a member reassigned from the BCI to the uniform force to nothing more than the right to prosecute a grievance under the collective bargaining agreement. Members serve in the BCI at the pleasure of the superintendent. Recognizing this, the Benevolent Association bargained for and got certain minimal guarantees in its labor agreement. The superintendent's regulations protect investigators from wrongful termination but do not allow hearings for reassignment. Nor do we find reason to invoke the hearing mechanism for discipline of members. The superintendent determines whom he deems fit

for service as investigator. Return to the uniform force is not discipline under the scheme but, rather, a proper determination that in the superintendent's opinion the member is no longer qualified for or no longer belongs in the BCI. The member has been returned to his appropriate rank in the uniform force and, thus, has no cause to claim a violation of his property interests. As the superintendent has unfettered discretion to return a member to the uniform force, the courts cannot review that decision.

Turning now to petitioners' claims that they were deprived of liberty without due process, we note that because they serve at the superintendent's pleasure does not mean they may be removed without a hearing under all circumstances. As the Supreme Court pointed out in *Roth* (408 US 564, *supra),* a stigma may attach to the dismissal which would require that the employee be given a hearing to clear his name. The court explained the liberty interest further in *Bishop v Wood* (426 US 341). It found no constitutional protection where there is no public disclosure of the reasons for discharge of an employee terminable at will. The only disclosures in *Bishop* were made orally to the employee in private and later in writing in response to interrogatories as part of discovery in the lawsuit.

In the case at bar, the record reveals that one day before petitioners were reassigned, *The Times Union,* a Rochester daily, reported that the State Police were investigating reports that some of its members had been selling stolen clothing. The report stated that State Police Superintendent William Kirwan had confirmed the investigation and was still uncertain whether criminal charges were in order. The article mentioned no one by name, referring only to four "troopers", some veterans, and stating that troopers in the Henrietta substation had been interviewed. Two days after the reassignment an article appeared in the *Democrat and Chronicle,* another Rochester daily, reporting the demotion of three State police detectives. A superintendent's deputy was quoted as stating that the troopers were guilty of a technical violation of department regulations and that no criminal charges were substantiated. He labeled as "erroneous" the reports that the three were suspected of dealing in stolen property. The deputy explained that the three merely used "bad judgment in an association" with a person of bad reputation. Again, no one was named.

▮ Petitioners were also given specific charges in writing, but those were kept private and in response to petitioners' requests. The written charges are strictly controlled by *Bishop* and provide no cause for a hearing. Nor can the demotions, standing alone, give rise to a deprivation of liberty *(Board of Regents v Roth,* 408 US 564, *supra).*

There is a real question whether petitioners were accused of any immorality or dishonesty *(Board of Regents v Roth, supra).* The second article makes it clear that poor judgment was the only basis for the reassignments. Further, the petitioners were merely returned to the uniform force, with full powers and privileges. Any charges more serious than the exercise of poor judgment would have required an internal inquiry to determine if the members were fit to continue as troopers. Restoring them to trooper status suggests no moral turpitude.

We also question whether there was *dissemination* of stigmatizing information. The first article merely quoted the Superintendent of Police as having confirmed an investigation. The second acknowledged demotions, but denied that any criminal acts had been committed. Neither named the petitioners. General confirmation of an internal investigation and a statement that certain members of the BCI had exercised bad judgment hardly stigmatize anybody, much less these petitioners. Petitioners argue that they could be identified by their return to uniform. The change in uniform in no way transforms harmless statements into defamatory remarks. We conclude that there were no statements impugning petitioners' reputations nor was there dissemination of any such statements. No hearing is in order. We, therefore, reverse and dismiss the petition.

The judgments should be reversed, on the law and the facts, and petitions dismissed, without costs.

SWEENEY, MAHONEY, LARKIN and HERLIHY, JJ., concur.

Judgments reversed, on the law and the facts, and petitions dismissed, without costs.