**Gladyse F. STANFORD, Plaintiff,**

v.

**NEW YORK CITY COMMISSION ON HUMAN RIGHTS, Isaiah Robinson, Jr., Chairman, Mercedes Nesfield, Executive Assistant, Lilliam Morales, Defendants.**

**No. 82 Civ. 0722 (GLG).**

United States District Court,
S.D. New York.

Jan. 19, 1983.

Gladyse F. Stanford, plaintiff, pro se.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York by Robin P. Schechter, Asst. Corp. Counsel, New York City, for defendants.

### OPINION

GOETTEL, District Judge:

Employment discrimination cases are becoming increasingly common. What is unusual about this case is that the employer accused of discrimination is the New York City Commission on Human Rights ("Commission")—the very agency responsible for combatting employment discrimination.[1]

The plaintiff was employed as a provisional human rights specialist at the Commission in the complaints processing division from May 1978 through February 1981.[2] Her duties included conducting fact finding conferences with complainants and respondents, writing reports, recommending dispositions of cases, and performing back-up intake duties of complainants who had come to file initial complaints, when requested to do so or so assigned.

The individual defendants are the Chairman of the Commission, Isaiah Robinson, Jr., the Executive Assistant, Mercedes Nesfield, and the person who was the acting director of the complaint processing division at the time of the plaintiff's discharge, Lillian Morales.[3]

When the plaintiff first began working at the Commission, Ernest Jones was the director of her department. Morales was the supervisor of another division who would sometimes supervise the plaintiff in Jones's absence. During 1978 and 1979, the plaintiff was considered a hard and competent worker, although something of a prickly personality. Jones considered her a highly productive employee. It was clear early on, however, that Morales and the plaintiff did not get along. In September 1980, Jones resigned and Morales was appointed as acting director of the complaint processing division. When the plaintiff learned that Morales was to become her superior, she advised Ms. Nesfield, the Executive Assistant, that she was unhappy at the prospect and would be resistant to her instructions.

In 1980, the Commission was experiencing a financial shortage and it had inadequate staff to cover its workload. Upon the directions of her superiors, Morales issued a memorandum on September 18, 1980, with stringent guidelines concerning annual leave, sick leave, field visits, overtime, lunch hours, and the need for everyone to assist on the intake procedures. The instructions of September 18, 1980, were resented by the plaintiff. Numerous altercations occurred between Morales and the plaintiff but no purpose would be served by reciting them.

---

1. The New York City Commission on Human Rights exists pursuant to section B1–1.0 through section B1–12.0 of the New York City Administrative Code. It has its principal offices at 52 Duane Street, New York, New York. It is funded largely through federal funds, under contract from the Equal Employment Opportunity Commission.

2. She did not have civil service status, being a provisional employee.

3. In January of 1982, Ms. Morales resumed her permanent position as a supervising human rights specialist and a new division director was appointed.

On October 28, 1980, a meeting was held between Nesfield and Morales, on the one hand, and the plaintiff and her union representative, on the other, to discuss her behavior. The plaintiff was issued a warning and told that further insubordination or violations of policy by her would be grounds for termination. Her behavior did not change. Thereafter, she was suspended without pay for two weeks for insubordination and refusal to follow established policies and procedures. Her suspension was accompanied by a warning that further infractions would lead to her termination.

The plaintiff's relationship with Morales continued in its unhappy status. After more warnings by her supervisor and the executive assistant Nesfield, the Chairman, Isaiah Robinson, terminated the plaintiff, effective February 25, 1981, for unsatisfactory service as a provisional employee.[4]

Even prior to her discharge, the plaintiff had filed an EEOC complaint challenging her two-week suspension. After her termination, she amended the complaint to include that event. Both complaints allege discrimination based on national origin and retaliation. In November 1981, the EEOC issued a finding of no probable cause and gave the plaintiff her "right to sue" letter.

The national origin complaint was based on the fact that the plaintiff was born on the Caribbean island of Anguilla. However, there is nothing in her appearance or accent to indicate that she is anything other than American born and there was no evidence that any of these defendants knew what the plaintiff's national origin was. The plaintiff is black, as are all three individual defendants and, for that matter, most of the employees of the Commission. Ms. Morales is a black Hispanic, who was born on the Caribbean island of Puerto Rico. No evidence was offered at trial to support any claim of discrimination because of national origin.

The claim of retaliation rests upon the fact that all of the employees of the Commission had been required to take a civil service examination for human rights specialists positions, in open competition with non-employees. A number of the employees did not pass the examination. Several of them, including the plaintiff, filed complaints with the EEOC challenging the examination as not being sufficiently related to the qualifications necessary for the position.[5] In addition, a number of other human rights specialists joined in a state court action challenging the examination, with the full support of the Commission, which was also displeased with the test and the effect it would have of removing many of its staff. The Commission openly encouraged its employees to challenge the examination if they wished to do so and provided them with meeting rooms and assistance in organizing their opposition.

The appeals to the EEOC were either withdrawn or unsuccessful, but the court challenge resulted in having the examination results set aside.[6] No retaliations were taken against any of those challenging the examination and, indeed, many of them stayed on and some of them have been promoted to higher positions. There was absolutely no evidence whatever to support the plaintiff's claim that her termination resulted from her challenging the civil service examination.

It was abundantly clear from the evidence at trial that the termination of the plaintiff's employment resulted from the personal antagonism that existed between the plaintiff and her supervisor, Morales. Both are strong-willed persons with little inclination to compromise. It is beyond the jurisdiction of this Court to determine the right or wrongness of their positions, although there were indications that there was something to be said on both sides. As

4. The plaintiff was continued on payroll through April 3, 1981.

5. They also made vague allegations about racial bias in the examination and we will assume for these purposes that a retaliation against the

filing of this sort of complaint could constitute a violation of Title VII.

6. To this date, no subsequent examination has ever been given, although one is scheduled.

is so often the case when there is an irreconcilable conflict of wills between a supervisor and an employee, it was the employee who was let go. Whether there was some better way of dealing with this problem is a question not within the province of this Court.

■ The Court has jurisdiction of the parties and the subject matter of the action.[7] The plaintiff has failed to make out a *prima facie* case of discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* on account of her national origin or retaliation, with respect to the conditions of her employment, either in her suspension or her termination. While the defendant's reasons for terminating the plaintiff may or may not have been proper from a business or employment standpoint,[8] it certainly resulted from non-discriminatory reasons. The federal courts should not be involved in reviewing personnel decisions of public agencies even though the individual decision challenged is mistaken or wrong. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The plaintiff has failed to show that the actions of the defendant in suspending or terminating her were in violation of Title VII of the Civil Rights Act of 1964. *Texas Dep't of Community Affairs v. Burdine,* 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The complaint, therefore, must be dismissed. The Clerk will enter judgment accordingly.

SO ORDERED.

7. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* became applicable to governmental employers on March 24, 1972.

8. As mentioned in note 2 *supra,* the plaintiff did not have civil service status. Whether she has any other recourse under New York law is not a matter before this Court.