THOMAS S., by his next friend, Joyce BROOKS, Plaintiff,

v.

Sarah MORROW, Secretary, North Carolina Department of Human Resources; Allen Childress, in his official capacity as guardian for the plaintiff; Benjamin Carpenter, Director, Gaston County Department of Social Services; James Melton, Director, Gaston-Lincoln Area Mental Health Program; Harley B. Gaston, Jr., David Beam, David Hollifield, James Forrester, Dean Carpenter, Robert Heavner, and Porter McAteer, in their official capacity as Gaston County Commissioners, Defendants.

No. C–C–82–418–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 18, 1984.

Edward G. Connette, Charlotte, N.C., Roger Manus, Carolina Legal Assistance for Mental Health, Raleigh, N.C., and Theodore O. Fillette, Legal Services of Southern Piedmont, Inc., Charlotte, N.C., for plaintiff.

Wilson Hayman, Reginald L. Watkins, Asst. Atty. Gen., William F. O'Connell, Sp. Deputy Atty. Gen., Walter M. Smith, Associate Atty., North Carolina Dept. of Justice, Raleigh, N.C., Catherine C. Stevens, R.T. Wilder, Jr., Mullen, Holland & Cooper, Jeff Trepel, Gastonia, N.C., and Robert H. Gage, Cox & Gage, Morganton, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

### I.

Paul Caldwell, next friend of plaintiff Thomas S., filed this suit on July 7, 1982, seeking declaratory and injunctive relief for Thomas S. under federal and state law. Paul Caldwell later became employed by defendants, and Joyce Brooks now serves as next friend.

Thomas S., a twenty-year-old Gaston County resident, has been diagnosed as suffering from, *inter alia*, schizophrenia and borderline mental retardation, and is incapable of either living independently or managing his own affairs. Given up for adoption at birth, Tom spent his first eighteen years in approximately forty different foster homes and institutions while in the custody of the Gaston County Department of Social Services (DSS). DSS shuffled Tom through so many placements during

his youth (*see* deposition of Dannette Rosenberg, pp. 10–15) because there were no appropriate community-based treatment facilities available in Gaston County during this period (defendant Morrow's answer, ¶ 17; defendant Carpenter's answer, ¶ 13).

Soon after Tom's eighteenth birthday, DSS succeeded in having Tom declared legally incompetent, and defendant Allen Childress, Regional Adult Mental Health Specialist of the Department of Human Resources (DHR), Division of Mental Health, Mental Retardation, and Substance Abuse Services, was thereafter appointed guardian under the authority of N.C.G.S. §§ 122–24.1 and 35–1.28. Because Childress considered Tom's then-current placement inappropriate, Childress caused Tom to be admitted to the "R" (mental retardation) unit at Broughton Hospital on March 15, 1982.

Four months after Tom was institutionalized at Broughton, his next friend brought this suit against state and local officials seeking judicial declaration that Tom's rights under the United States Constitution and under state law had been denied by defendants, and seeking prospective injunctive relief to remedy the alleged wrong. The complaint alleged that, under federal and state law, Tom is entitled to more appropriate treatment of his condition in a less restrictive, community-based setting. On May 26, 1983, plaintiff and two of the local defendants agreed to a special treatment plan funded by those defendants which provided appropriate community-based treatment for Tom until March 1, 1984. That agreement was incorporated into a judgment, and, because of that judgment, the court deferred ruling on all parties' motions for summary judgment. The court designated the case as inactive until February 1, 1984. Since the consent judgment was filed, Tom has been shifted to at least three additional placements. He is now being housed in the Gaston County detoxification facility because there is no place else for him to go. Letter from plaintiff's counsel, Edward G. Connette (filed August 29, 1984).

Meanwhile, the parties, and others, have filed a number of additional motions. All parties have renewed their motions for summary judgment. Other mentally impaired persons have moved that they be allowed to intervene, and have joined plaintiff in a motion to amend the complaint and to certify a class. The local defendants have moved that, in the event a statewide class is certified, all claims against the local defendants be severed from the class action case.

On August 15, 1984, the court heard argument on those motions.

## II.

■ All pendent state law claims should be dismissed. *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), is dispositive of those claims. *Pennhurst* held that the Eleventh Amendment prohibits federal courts from adjudicating pendent claims against state officials based on those officials' alleged violations of state law.

Also in *Pennhurst,* however, the Supreme Court reaffirmed the established principle that federal courts do have jurisdiction to grant relief against state officials based on those officials' alleged violations of federal law. *Id.,* at ——, 104 S.Ct. at 911; *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "[I]n such cases this Court is vested with the constitutional duty to vindicate 'the supreme authority of the United States'...." *Pennhurst,* —— U.S. at ——, fn. 17, 104 S.Ct. at 912, fn. 17.

## III.

Plaintiff is entitled to summary judgment based on his constitutional claims against defendants.

## A

Plaintiff claims that his liberty—a substantive right arising solely under the Fourteenth Amendment to the Constitution—has been denied by the defendants. The seminal case on this "substantive due

process" claim is *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). *Youngberg* discussed "the substantive rights of involuntarily committed mentally retarded persons under the Fourteenth Amendment to the Constitution." *Id.,* at 314, 102 S.Ct. at 2457.

■ Although *Youngberg* discussed the constitutional rights of a severely retarded, institutionalized individual, the standards outlined in that case are appropriate to this case. The parties are in dispute about whether Tom is mentally retarded, but they agree that he suffers from mental impairments which prevent him from living independently and which necessitated the appointment of a guardian. Tom is not now institutionalized, but he was so placed at the time the suit was filed, and, as a ward of the state, Tom at any time may be required to return to Broughton, if his guardian so directs. Therefore, Tom is like the plaintiff in *Youngberg* insofar as the state has control over Tom's liberty and care.

The holding in *Youngberg* dictates that defendants Morrow and Childress are responsible for ensuring that plaintiff retains the liberty to which he is entitled solely under the Fourteenth Amendment. Defendant Childress, regional specialist for DHR, was plaintiff's guardian and caused plaintiff to be admitted to Broughton on March 15, 1982. Defendant Morrow is Secretary of DHR and is responsible for the administration of DHR as well as the supervision of county departments of social services.

Morrow and Childress, like the institution officials in *Youngberg,* are responsible for the legitimate restraints on plaintiff's liberty resulting from plaintiff's mental incompetency and wardship; also like the defendants in *Youngberg,* Morrow and Childress are charged with the responsibility that these legitimate restraints are no more restrictive than necessary.

■ Liberty interests protected by the Fourteenth Amendment include safety, liberty from bodily restraint, and "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Id.* at 319, 102 S.Ct. at 2460.

■ The training to which plaintiff is entitled under the Fourteenth Amendment is that which is "reasonable" in light of the "balance [between] 'the liberty of the individual' and 'the demands of an organized society.'" *Id.* at 320, 102 S.Ct. at 2460. "In determining what is 'reasonable'—in this and in any case presenting a claim for training by a State—we emphasize that courts must show deference to the judgment exercised by a qualified professional." *Id.* at 322, 102 S.Ct. at 2461.

> The decision [to treat a certain way], if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Id.* at 323, 102 S.Ct. at 2462. This court, therefore, in determining the training or treatment to which plaintiff is entitled under the Fourteenth Amendment, must look for guidance to the professional judgment and decisions of those who examined and treated him.

■ Defendants recently have been filing affidavits asserting, at least in part, that plaintiff has a behavioral problem which makes it difficult to treat him. *See, e.g.,* affidavit of James B. McKelvey, dated August 30, 1984; affidavit of Rudy Cannon, dated August 27, 1984. The court fails to see how that fact can excuse defendants from providing the treatment to which plaintiff is entitled. People with problems are rarely easy to deal with. If plaintiff were "normal," then he would not need the treatment the professionals say he needs. The solution to whatever behavioral problems plaintiff may have is *not* to place him inappropriately in a detoxification facility; it is to provide him with appropriate treatment.

The overwhelming weight of professional opinion concerning the appropriate treat-

ment needs of Thomas S. appears to be consistent with the recommendations formulated by the R Unit treatment team as set forth in the psychological evaluation dated November 22, 1982, and signed by Staff Psychologist William R. Wellborn, III:

RECOMMENDATIONS

1. Placement in a group home with adults of average intelligence without severe emotional difficulties (stable environment with structure)

2. Counseling by both male and female therapists regarding conflicts in establishing relationships with both men and women

3. Needs exposure to many social situations outside of the institutional environment (e.g. shopping, dining out, short trips, etc.)

4. Attend an Outward Bound Course (21-day course) to help develop his ego, strength, and self-concept

5. Placement in an environment that will allow the perfect balance between supervision and freedom so that Tom will not feel rejected

6. Training in mathematics and money management

7. Training in a specific trade like auto mechanics so that Tom will more likely be able to support himself in the future

Defendant Morrow's *Memorandum in Support of Motion to Dismiss, or Alternatively, Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment,* Exhibit 7, page 9 (March 31, 1983). Details of the recommended appropriate treatment vary according to the professional making the assessment, but the basic, common elements appear to be:

1. A stable environment—i.e., a relatively permanent placement.

2. A non-institutional adult foster care situation which would allow Tom to function as a family member with some supervision but with relatively few restrictions.

3. Basic educational training and vocational training.

4. Therapy and counseling.

*See, e.g.,* Affidavit of Rudy Cannon (filed August 30, 1984).

Defendants have filed a large number of affidavits which, defendants claim, show that the haphazard, inconsistent treatment provided for plaintiff was consistent with the recommendations of professionals. *See, e.g.,* affidavits attached to defendant Morrow's *Memorandum in Support of Motion to Dismiss, or Alternatively, Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment* (filed March 31, 1983). However, scrutiny of those affidavits, coupled with an examination of the deposition excerpts and affidavits submitted by plaintiff, shows that most of the treatment provided for plaintiff was not consistent with that recommended by the professionals. *See, e.g.,* affidavits of Paul Caldwell, Dr. Jacelyn Wedell-Monnig, Dr. Carolyn Schroeder and depositions of Allen Childress (pp. 11–12, 37–39, 93) and Benjamin Carpenter (p. 12) (filed May 6, 1983). To the extent that any professionally prescribed treatment differed from that set forth above, it differed because the professional's stated judgment was modified to conform to the *available* treatment, rather than to the *appropriate* treatment, for plaintiff's condition.

Lack of funding or of established alternatives is not a factor which may be considered in determining the scope of this constitutional right. Of course, that factor is critical in determining whether *damages* may be recovered by one who was denied his right to appropriate treatment.

> In an action for damages against a professional in his individual capacity, however, the professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary constraints; in such a situation, good-faith immunity would bar liability.

*Youngberg,* at 323, 102 S.Ct. at 2462. Just as certainly, however, consideration of bud-

getary constraints is not proper when *defining* this constitutional right. To the extent that a professional's judgment of the appropriate treatment is shown to have been modified to fit what is available, that judgment likely has become "a substantial departure from accepted professional judgment, practice, or standards." The Supreme Court in *Youngberg* recognized that "normal professional standards" (or professional judgment) and "budgetary constraints" are separate concepts ("the professional will not be liable if he was *unable to satisfy his normal professional standards because of budgetary constraints*" *Id.*, at 323, 102 S.Ct. at 2462 [emphasis added]).

■ Nor are budgetary constraints restrictive of a court's equitable authority and power in fashioning prospective relief after determining that this constitutional right has been violated. *See, e.g., Wyatt v. Stickney*, 344 F.Supp. 387, 394 (M.D.Ala. 1972), *affirmed in part, remanded in part and decision reversed in part sub nom. Wyatt v. Aderholt*, 503 F.2d 1305 (5th Cir. 1974). *Accord, Scott v. Plante*, 691 F.2d 634, 637 (3d Cir.1982):

> Obviously the problem of hindsight interference with decisions made by hard-pressed professional staff members of state mental institutions is a more serious one than that of assisting them in directing prospective injunctive relief against appropriate state officials. *See Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974).

■ For the foregoing reasons, the court concludes that defendants Morrow and Childress have denied and continue to deny plaintiff his rights under the Fourteenth Amendment. Plaintiff is entitled to treatment recommended by qualified professionals whose judgment is unsullied by consideration of the fact that the state does not now provide appropriate treatment or funding for appropriate treatment.

Plaintiff is therefore entitled to prospective injunctive relief.

## B

■ Plaintiff also claims his state-created liberty interests—i.e., those conferred on plaintiff by North Carolina law—were taken from him by defendants without due process of law, and, thus, in violation of his rights under the Fourteenth Amendment to the Constitution. In particular, plaintiff claims that the North Carolina General Statutes, §§ 35–1.6 *et seq.*, (the North Carolina Guardianship Act); § 122–55.8, (the Continuity of Care Statute); § 143B–137; and § 168–1 create liberty interests which may not be deprived without due process of law. In support of this "procedural due process" claim, plaintiff cites *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980); and *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). (State-created liberty interests, like federally derived constitutional rights, trigger the procedural protections of the Fourteenth Amendment.)

Defendants assert that this claim is foreclosed by *Pennhurst State School & Hospital v. Halderman, supra. Pennhurst*, however, does not go so far. *Pennhurst* held only that federal courts may not exercise pendent jurisdiction to adjudicate claims of state law violations against state officials. A "procedural due process" claim is an entirely different sort of action. The role of state law in this constitutional claim is merely to *define* the liberty interest at stake. In order to prevail, plaintiff must show that his *procedural* rights *under the Constitution* were not provided when the state took away plaintiff's state-created right to a particular form of liberty. Such a suit, then, is not an enforcement of state law, but an enforcement of federal constitutional law. As the Court said in *Pennhurst*, "[I]n such cases this Court is vested with the constitutional duty to vindicate 'the supreme authority of the United States'...." *Pennhurst*, —— U.S. at ——, fn. 17, 104 S.Ct. at 912, fn. 17.

Plaintiff argues that this cause of action entitles him to the same prospective relief afforded under his "substantive due process" claim, since the "professional judgment" of those who have treated plaintiff is that he should be placed in a less-restrictive, community setting with enriching treatment. Defendants deny that many of the statutes even apply to plaintiff. They also say that, even if the statutes apply, plaintiff is not entitled to relief.

Since the court already has determined that plaintiff is entitled to relief based on his rights derived solely from the Fourteenth Amendment, the court need not reach this second constitutional claim for relief asserted by plaintiff. The court recognizes that state *and* local defendants, rather than just defendants Morrow and Childress, would share responsibilities should plaintiff recover on his second constitutional claim. The court will not speculate, however, on who *might* be responsible when it is clear that Morrow and Childress *are* responsible on the basis of plaintiff's first constitutional claim.

For the reasons set forth above, IT IS THEREFORE ORDERED that:

1. The pendent state law claims are DISMISSED without prejudice.

2. Summary judgment for plaintiff Thomas S. is ALLOWED to the extent set forth above.

3. Counsel for plaintiff and defendants Morrow and Childress shall confer and attempt to propose, within ten (10) days, a judgment which includes a treatment program for Thomas S. based on "professional judgment" consistent with this order. Counsel should inform the court within that time frame whether they are able to reach an agreement.

4. The claims against defendants Benjamin Carpenter, Melton, Gaston, Beam, Hollifield, Forrester, Dean Carpenter, Heavner, and McAteer are DISMISSED without prejudice.

5. The court defers judgment on the issues of

(a) intervention of other plaintiffs,

(b) amendment of plaintiff's complaint, and

(c) certification of a class action.